[Civ. No. 6461.   Fourth Dist.   Aug. 28, 1961.]

DANIEL T. BALDWIN et al., Respondents, v. CITY OF SAN DIEGO et al., Appellants.

J. F. DuPaul and Alan M. Firestone, City Attorneys, and Robert L. Bergen, Deputy City Attorney, for Appellants.

Kenneth Sperry for Respondents.

SHEPARD, J.—This is an appeal by defendants city of San Diego, hereinafter called "City," and certain of its officers from those portions of a judgment in declaratory relief which decree that plaintiffs are entitled to certain fluctuating pension rights and award specific sums to each plaintiff for accrued unpaid pension installments.

### FACTS

In general substance, the facts which apply to all plaintiffs are as follows: Plaintiffs are retired members of the Police or Fire Departments of City. All plaintiffs filed claims and sued for recovery of certain alleged unpaid amounts of money alleged to be due and unpaid on their retirement pensions, on the theory that by reason of certain charter changes after their pension rights became vested, their pension payments had been improperly held to a "fixed" rate of pension under a charter amendment of 1941, whereas they should have been paid on a "fluctuating" rate; and on the additional theory that they were entitled to the benefit of certain "extra" pay emoluments now being paid to persons holding the position held by each of them prior to retirement. The trial court awarded certain sums to each plaintiff on the basis of the difference between the "fixed" rate on which each plaintiff had actually been paid and the amount that would

have been paid on the basis of the "fluctuating" rate, plus the said "extra" pay emoluments above referred to, for the period of three years prior to the date of the filing of each claim.

At the time plaintiffs were employed by City, the wording of the pension benefit provisions applicable to plaintiffs provided for a "fluctuating" pension conforming to a percentage of the rate of pay for the position held by each of them during their service, adjusted to the rate of pay for each such position as currently paid at the time the pension payments accrued. In the year 1941, City's charter was changed to provide a "fixed" pension rate. Shortly after the decision by this court in *Abbott* v. *City of San Diego,* 165 Cal.App.2d 511 [332 P.2d 324], in which it was held that the charter provision purporting to restrict claims to the 90-day period immediately preceding filing of claims was ineffectual to prevent recovery of unpaid sums accruing during the three-year period immediately prior to the commencement of the action, City commenced procedure for enactment of an amendment to that section so as to supply the deficiencies therein which had been pointed out. Thus section 110 of City's charter, in accordance with an amendment thereto effective May 20, 1959, now provides, in substance, that no action may be maintained against City unless a claim be filed as therein provided, within 90 days from the date of accrual of such claim. All claims herein referred to were filed prior to 90 days after the effective date (May 20, 1959) of said amendment to section 110 of City's charter (Stats. 1959, p. 5724). In fact, except the claim of plaintiff Raymond D. Ritchey, which was filed June 19, 1959, all claims were filed immediately prior to the effective date of said amendment. No complaint is made as to form of the claims or the time within which the action was filed after the filing of claims.

The trial judge decreed that plaintiffs had acquired a vested right to the "fluctuating" pension and that the "fixed" pension limitations provided by the amendment of 1941 were not applicable. City does not contest, in this appeal, that portion of the judgment decreeing "fluctuating" pension rights to plaintiffs, but does challenge certain other provisions of the judgment.

### STATUTE OF LIMITATIONS

City first contends that the trial court erred in determining that section 110 of City's charter, as amended, has no retroactive application to claims filed by plaintiffs against City.

It is well settled that a legislative authority may validly shorten the time within which an action may be commenced, providing the claimant is allowed by the new statute a reasonable time after the effective date of the new limitation within which to bring action on an accrued cause not already barred by the former statute. But it is also settled that such new statute so shortening the time for filing of an action may not validly destroy the enforcement of a vested right by a regulation that retroactively cuts off such right of enforcement, without any opportunity to the claimant to commence enforcement after the shortened time commences to run. Destroying enforcement of a vested right is, under the conditions here presented, tantamount to destroying the right itself. These rules have been recognized by our Supreme Court from the very commencement of jurisprudence in this state. (*Scarborough* v. *Dugan,* 10 Cal. 305, 308; *Doehla* v. *Phillips,* 151 Cal. 488, 492 [91 P. 330]; *Rosefield Packing Co.* v. *Superior Court,* 4 Cal.2d 120, 122 [1-2] [47 P.2d 716]; *Norton* v. *City of Pomona,* 5 Cal.2d 54, 63 [9] [53 P.2d 952]; *Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269, 274-275 [4-6] [138 P.2d 673, 147 A.L.R. 1111]; *Wells Fargo & Co.* v. *City & County of San Francisco,* 25 Cal.2d 37, 41 [5] [152 P.2d 625]; *Rand* v. *Bossen,* 27 Cal.2d 61, 65 [4] [162 P.2d 457]; *Scheas* v. *Robertson,* 38 Cal.2d 119, 125 [4] [238 P.2d 982].) A plethora of cases decided by our District Courts of Appeal have followed the same rule.

It is also well recognized that the right of a pensioner to payments under his pension is a contractual vested right. The destruction of such right without due process of law is forbidden by our Constitution. (*Wallace* v. *City of Fresno,* 42 Cal.2d 180, 183 [1] [265 P.2d 884]; *Allen* v. *City of Long Beach,* 45 Cal.2d 128, 131 [1] [287 P.2d 765]; *Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 447 [1] [326 P.2d 484]; *Abbott* v. *City of San Diego, supra,* p. 517 [1].)

In construing a legislative enactment, courts will presume that the Legislature did not intend an application of the statute which would violate the Constitution, and will not give it such a construction as to make it contrary to the Constitution unless the wording of the statute compels such construction.

"It is an established principle of statutory construction that when two alternative interpretations are presented, one of which would be unconstitutional and the other constitutional, the court will choose that construction which will

uphold the validity of the statute and will be constitutional.'' (*Estate of Skinker,* 47 Cal.2d 290, 297 [10] [303 P.2d 745, 62 A.L.R.2d 1137].) See also *Olivas* v. *Weiner,* 127 Cal.App. 2d 597, 600 [6] [274 P.2d 746]; *County of Los Angeles* v. *Legg,* 5 Cal.2d 349, 353 [2] [55 P.2d 206]; *In re Shafter-Wasco Irr. Dist.,* 55 Cal.App.2d 484, 488 [6] [130 P.2d 755]; *Cuthbert* v. *Woodman,* 185 Cal. 43, 45 [1] [195 P. 673]; *Fay* v. *District Court of Appeal,* 200 Cal. 522, 542 [13] [254 P. 896]; *People* v. *McCaughan,* 49 Cal.2d 409, 416 [10] [317 P.2d 974].)

It is thus clear that a reasonable time after the effective date of the statutory change shortening the time for commencement of action must be given to the holder of a valid accrued claim within which to file his claim or commence his action. What is a reasonable time within which to commence such an action has been held to be primarily a legislative matter; various cases have held times running from 90 days up to one and a half years to be well within the right of the legislative body. (*Coleman* v. *Superior Court,* 135 Cal.App. 74, 80 [26 P.2d 673]; *Masonic Mines Assn.* v. *Superior Court,* 136 Cal.App. 298, 300 [2] [28 P.2d 691]; *Reynolds* v. *Jensen,* 14 Cal.App.2d 558 [2] [58 P.2d 687]; *Kline* v. *San Francisco Unified School Dist.,* 40 Cal.App.2d 174, 176 [2] [104 P.2d 661, 105 P.2d 362]; *Arques* v. *National Superior Co.,* 67 Cal. App.2d 763, 778 [11] [155 P.2d 643]; *Rombotis* v. *Fink,* 89 Cal.App.2d 378, 391 [5] [201 P.2d 588].)

A statute is presumed to act prospectively unless it expressly or by necessary implication declares to the contrary. (Code Civ. Proc., § 3; *Bank of America* v. *Dennison,* 8 Cal. App.2d 173, 177 [2] [47 P.2d 296]; *Masonic Mines Assn.* v. *Superior Court, supra; Olivas* v. *Weiner, supra,* p. 600 [7-10]; *Fountain* v. *State Board of Education,* 157 Cal.App.2d 463, 469 [4-5] [320 P.2d 899]; *People* v. *City of Garden Grove,* 165 Cal.App.2d 794, 805 [11] [332 P.2d 841]; *Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.,* 30 Cal.2d 388, 393 [5] [182 P.2d 159]; *State* v. *Industrial Acc. Com.,* 48 Cal.2d 355, 361 [2-3] [310 P.2d 1].)

Thus, in the case at bar, it is also clear that if section 110 of the charter, as amended effective May 20, 1959, should be construed as cutting off the right to recover prior accrued unpaid pension payments not theretofore barred by the prior statute of limitations, and that said section 110 was not intended to give a claimant of such pension payments a reasonable time within which to file his claim, the result would

be that by the mere arbitrary passage of the statute a claimant's right of recovery would for all practical purposes be extinguished as to two and three-fourths years of accrued, unpaid, valid claims. Such a result would be harsh and unjust and in direct violation of the rule hereinbefore pointed out; that is, that while the Legislature may validly shorten time for the bringing of actions, it must, as to the accrued rights of action not already barred by an existing limitation, allow a reasonable time for the claimant to file his claim or bring his action. If it attempts to arbitrarily cut off existing rights by such subterfuge, such an attempt is unconstitutional. As we have already noted, the right of plaintiffs herein to recover accrued unpaid pension payments is a vested contractual right. Nothing in the act compels a construction that it was intended to cut off such right without giving plaintiffs a reasonable opportunity to file their claims and pursue their causes of action, and we will not so construe it. The rule of construction quoted from *Estate of Skinker, supra,* is too thoroughly established to require further discussion.

Said section 110, as amended, was not intended to operate retroactively in the sense claimed by City. The pension claimants were given the reasonable time of 90 days within which to file their claims on all accrued unpaid pension payments not already barred by the statute of limitations, and the filing of their claims was well within that time. Thus interpreted, said section 110 is, in such respect, perfectly valid.

Nothing said in the various authorities cited by City is contrary to this view. In *Abbott* v. *City of Los Angeles, supra,* section 376 of that city's charter had already been in effect since the year 1927 (Stats. 1927, p. 2014), and there was no occasion to, and the court did not, discuss the problem of retroactive effect. *Estate of Cole,* 52 Cal.App.2d 520 [126 P.2d 660], merely deals with conflict of laws and holds that *lex fori* controls as to procedure. *Arques* v. *National Superior Co., supra,* deals with admissibility of evidence of business records. *City of Los Angeles* v. *Oliver,* 102 Cal.App. 299 [283 P. 298], relates to the time of evidence of value in eminent domain proceedings and affirmatively recognizes the statements of law hereinbefore set forth. *Wood* v. *Wood,* 126 Cal. App. 237 [14 P.2d 584], merely sustains an award of counsel's fees decreed after statutory provision therefor. *San Bernardino County* v. *Industrial Acc. Com.,* 217 Cal. 618 [20 P.2d 673], allowed credit to an employer, in a compensation case, of amounts already paid. *Buck* v. *Canty,* 162 Cal. 226 [121

P. 924], deals with validity of a tax sale by a state after it had already taken title. None of these cases, nor others cited by City, enunciate any different principles than those hereinbefore set forth. All of them recognize directly or by inference that a change of procedure which arbitrarily cuts off vested rights without giving the claimant a reasonable time to commence enforcement proceedings cannot be held valid.

Since all plaintiffs filed claims within 90 days after the effective date of the charter amendment imposing the 90-day limitation, they were entitled to pursue in this action those accrued rights not already barred by the statute of limitations. The ruling of the trial judge was correct in that respect.

### RITCHEY CLAIM

City repeats the same objection with respect to the claim of plaintiff Raymond D. Ritchey, which was filed June 19, 1959, and who was included in this action as an additional party plaintiff by stipulation of counsel. The factual results and the rules of law respecting the Ritchey claim are identical as to this contention of City, and what has hereinbefore been said applies with equal force to this contention of City. No other discussion is necessary respecting this claim. The trial court's ruling was correct in this respect.

### COLLINS CLAIM

The rules hereinbefore set forth govern with equal force the trial court's decision as to the claim of plaintiff Carrie M. Collins, except in one respect. The exception arises through the contention on this appeal that the evidence was insufficient to show that she was entitled to the benefit of a certain 5 per cent extra pay rate over and above the highest regular salary rate paid for her position. The substantial facts relating to this particular point are as follows: Collins retired April 16, 1950. Three years later City adopted ordinance Number 5623, which provides, *inter alia*, that under certain specified conditions of unusual service preliminarily certified by the city manager of City as being required for the City's interest, certain employees might be classified by the Civil Service Commission to receive an extra 5 per cent pay. (See note 1 below for copy of that portion of the ordinance

---

Note 1. Excerpt from Ordinance No. 5623 (New Series) of the Ordinances of the City of San Diego, adopted May 28, 1953:

"Section 7. The members of the Classified Service, other than firemen and part-time employees, shall receive the foregoing salaries hereinabove provided as compensation in full for work performed by said

section involved.) Under this ordinance the city manager might make such certification under two types of conditions: first, where the employee under an established annual work schedule works all legal holidays except days of rest without compensating time off; second, where the employee's established annual schedule of work requires the *majority* of hours worked to be before 8 a. m. or after 6 p. m., or requires a split shift separated by more than two hours. Under either of these schedules, the Civil Service Commission is permitted to order 5 per cent extra pay to the employee required to work such schedule. Certain other provisions not here directly involved provide for additional compensation for time worked in excess of the normal work day and 40-hour week.

The complaint herein makes no specific mention of the extra pay involved under ordinance Number 5623, nor is there any allegation that Collins worked holiday time or split shifts, or a majority of night work, on any established annual schedule. The only testimony given by Collins on the subject of her qualification for the extra rate may be summarized as follows: Prior to retirement she worked in the San Diego Police Department as a telephone operator; at various times she occasionally worked on different shifts; for the year prior to her retirement she was uncertain about the type of work she engaged in at any particular time; she says she took some part-time work in the Identification Bureau; she did some filing in the Traffic Division; she did some relief work on "the

members of the Classified Service during an average forty-hour week and eight-hour day throughout the fiscal year of 1953-1954, except as hereinafter provided.
"Whenever the City Manager, or other appointing authority, certifies to the Civil Service Commission that the City's interest requires an employee, in order to perform the duties assigned to him or to the position he occupies, to work at times unusual for the class of position he occupies, such as to work (1) on an established annual schedule all legal holidays throughout the fiscal year without compensatory time off, except at such time as a legal holiday coincides with a day of rest or (2) to work on an established annual schedule in which the majority of hours of work of said employee are scheduled to be performed before 8:00 A. M. or after 6:00 P. M. of any working day, or to work; on an established annual schedule, a split hour shift in which the hours of work are divided by more than two consecutive hours in a twelve-hour work period, the Civil Service Commission may authorize an increase of compensation for the employee who is required to work under the unusual conditions above described, in which case such employee shall receive one Standard Rate increase for each of the said unusual conditions which shall be certified by the appointing authority on the official payroll time sheet to the Personnel Director. Such increases in compensation shall be known as Extra Rates . . ."

board'' (we assume she means telephone switch board); she sometimes substituted for a sick operator; on some occasions she worked on night shifts; she says, respecting length of service in any one capacity, "most of it was days." Her statement in one place that she worked "around the clock," when read with her other testimony, can only be taken as meaning that on *some* occasions she worked on different shifts, but "most of it was days."

It will be readily seen from the foregoing that the evidence on behalf of Collins does not show, and she nowhere contends, that she worked any established annual shift at any time. Neither does she say that the majority of her work hours were before 8 a. m. or after 6 p. m.; in fact, she affirmatively testified to the contrary. She does not say she worked on holidays at any time. She does not say she worked a regular split shift or any split shift at all. We can find nothing in any of her testimony that would qualify her for any extra rate of pay under the provisions of ordinance Number 5623.

None of the authorities cited by her counsel deal with the subject of extra pay for especially onerous service. Those cases in which pay for longevity and merit ratings were allowed, such as *City of Long Beach* v. *Allen,* 143 Cal.App.2d 35 [300 P.2d 356], and *Abbott* v. *City of Los Angeles,* 178 Cal.App.2d 204 [3 Cal.Rptr. 127], are based on a factual situation in which the employee prior to retirement had reached the actual highest rate of pay and no provision for certification was then available. By ordinance passed at a later time, certification and extra pay therefor on longevity and merit were provided for. In each such case, the employee involved actually performed all the service for which later certification was provided. But that is not true in the case here at bar. If the proof in the case at bar showed that Collins did, in fact, work a majority of her hours of service before 8 a. m. or after 6 p. m., or that she worked all of the holidays except rest days on an annual basis; or that she worked split shifts on a regular assignment, she might well have classified under the 5 per cent extra pay increase even though at the time she worked there was no provision for certification. We think lack of certification under such circumstances would not of itself be a bar. Under the record here presented, however, we are not required to decide that point since the evidence does not show any such state of facts.

Liberality of interpretation of pension laws does not authorize the assumption of facts not reasonably shown by

the record, nor use of inferences not properly deducible from the evidence shown.

The judgment is affirmed as to all plaintiffs except Carrie M. Collins.

The judgment in favor of plaintiff Carrie M. Collins is reversed, with directions to the trial court to enter judgment in her favor after recalculating her pension allowance on a base from which the 5 per cent extra pay rate has been deleted. If it is necessary to take further evidence on the mathematics of such calculation, the trial court may do so and thereupon enter judgment accordingly.

All plaintiffs will recover costs on appeal.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied September 21, 1961.