[Civ. No. 12554. Third Dist. Feb. 9, 1971.]

THE PEOPLE ex rel. ALAN CRANSTON, as State Controller, Plaintiff and Appellant, v. WILLIAM G. BONELLI, Defendant and Respondent.

## COUNSEL

Thomas C. Lynch, Attorney General, and William J. Power, Deputy Attorney General, for Plaintiff and Appellant.

Robert E. Hannon for Defendant and Respondent.

## OPINION

**BRAY, J.**[*]—Plaintiff appeals from an order dismissing its complaint pursuant to Code of Civil Procedure section 581a.[1]

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]After oral argument of the appeal in this case, defendant William G. Bonelli died. Counsel agree that it is well settled that the death of a party after submission of a matter does not cause the court to lose jurisdiction of the pending action or to require the substitution of a personal representative as a prerequisite to proceeding. In such cases the court has power to enter a judgment *nunc pro tunc* as of a date preceding the death of the party. (*Estate of Pillsbury* (1917) 175 Cal. 454, 461 [166 P. 11,

QUESTION PRESENTED

██ Did the three-year limitation provided in section 581a of the Code of Civil Procedure run in favor of defendant absent from the state but amenable to service under former section 417 of the Code of Civil Procedure?

RECORD

William G. Bonelli was a member of the California State Board of Equalization from April 3, 1938 to January 1, 1955. On November 4, 1954, he left California and traveled to Arizona. On August 15, 1955, he left Arizona and went to the Republic of Mexico where he resided until his death last year. (See fn. 1, *supra.*) From 1962 on he resided in Mexico at 812 Padre Kino Avenue, Hermosillo, Sonora, a fact known to plaintiff since April 17, 1966. During his residency there his status was that of "immigrante" (resident alien). In 1953 and 1954 the Attorney General investigated Bonelli's actions as a member of the Board of Equalization for possible embezzlement, finding that he had allegedly accepted bribes from alcoholic beverage licensees during the years 1950 to 1954. On May 6, 1959, plaintiff filed a complaint in this action against Bonelli for an accounting. On August 21, 1959, plaintiff filed a declaration for attachment but it was never returned. ██ On January 22, 1969, plaintiff published summons, after having obtained an order for publication of summons. Defendant received a copy of summons and complaint at his home in Mexico on June 23, 1969. Personal service was never effected. Service by mail is not personal service. (*Whealton* v. *Whealton* (1967) 67 Cal.2d 656, 659 [63 Cal.Rptr. 291, 432 P.2d 979].) On August 7, 1969, defendant filed a motion to quash service of summons for lack of jurisdiction, together with a motion to dismiss because of failure to serve summons within three years. The motion to quash summons was denied, and the motion to dismiss was granted under then section 581a of the Code of Civil Procedure. The state appeals from the order of dismissal dated September 15, 1969, and amended November 3, 1969.

The court found that "personal service could have been made [on defendant] in Mexico through an *Actuario,* an officer of the Mexican courts."

Section 581a of the Code of Civil Procedure as adopted in 1907 and in force on the date of the order appealed from provided in pertinent part that all actions must be dismissed by the court "unless the summons shall

---

3 A.L.R. 1396]; *Leavitt* v. *Gibson* (1935) 3 Cal.2d 90, 106 [43 P.2d 1091]; 3 A.L.R. 1403; 68 A.L.R. 261.) Actual submission, however, is not required. (*Leavitt* v. *Gibson, supra,* p. 106.) Apparently no probate proceedings have been started. This court deems that the circumstances of the case demand a determination of the issue without waiting for the appointment of an executor or administrator.

be served and return thereon made within three years after the commencement of said action . . . provided . . . no dismissal shall be had under this section as to any defendant because of *the failure to serve summons on him during his absence from the State. . . .*" (Italics added.)

There was no provision in the code to obtain a personal judgment by service of summons on a defendant absent from the state until 1951 when former section 417 of the Code of Civil Procedure was adopted. As it stood at the times relevant to this case,[2] the section provided, in pertinent part, that "Where jurisdiction is acquired over a person who is outside of this State by publication of summons . . . , the court shall have the power to render a personal judgment against such person only if he was personally served with a copy of the summons and complaint. . . ."

Defendant contends that the adoption of this section providing for personal service of a person absent from the state in effect modified section 581a so that, if he were amenable to service, that portion of section 581a excluding from the three-year limitation persons absent from the state no longer applied, and that an action against a person absent from the state would have to be dismissed if that person was amenable to service and was not served within the three-year period. This was the position taken by the trial court,[3] holding in effect that, instead of taking the words "absence from the State" in the proviso of section 581a literally, the proviso should be construed as saying that "no dismissal shall be had under this section because of the failure to serve summons on him while he was not amenable to the process of the court."

It cannot be gainsaid that in 1907 when section 581a was adopted the

[2]Section 417 was repealed by Statutes of 1969, chapter 1610, section 21, operative July 1, 1970.

[3]Section 581a was amended by Statutes of 1970, chapter 582, section 1, stating in part, "(d) The time during which the defendant was not amenable to the process of the court shall not be included in computing the time period specified in this section."

This amendment cannot apply to this proceeding as "It is well settled that a legislative authority may validly shorten the time within which an action may be commenced, providing the claimant is allowed by the new statute a reasonable time after the effective date of the new limitation within which to bring action on an accrued cause not already barred by the former statute. But it is also settled that such new statute so shortening the time for filing of an action may not validly destroy the enforcement of a vested right by a regulation that retroactively cuts off such right of enforcement, without any opportunity to the claimant to commence enforcement after the shortened time commences to run." (*Baldwin* v. *City of San Diego* (1961) 195 Cal.App.2d 236, 240 [15 Cal.Rptr. 576].)

While the *Baldwin* case involves statutes of limitation, the same principle is applicable where a mandatory dismissal provision is shortened. (*Wells Fargo & Co.* v. *City & County of San Francisco* (1944) 25 Cal.2d 37 [152 P.2d 625]; *Coleman* v. *Superior Court* (1933) 135 Cal.App. 74 [26 P.2d 673]; *Masonic Mines Assn.* v. *Superior Court* (1934) 136 Cal.App. 298 [28 P.2d 691].)

Legislature knew that it was determining that the dismissal portion of the section could not apply to a person absent from the state because no provision had been made at that time for personal service outside the state. The same is true as to the situation when the section was amended in 1933 (Stats. 1933, ch. 744, p. 1896) and 1949 (Stats. 1949, ch. 463, p. 810). The section was again amended in 1955 (Stats. 1955, ch. 1452, p. 2640) in particulars not relevant here. The Legislature knew in 1955 that section 417 had been adopted in 1951, making persons absent from the state amenable to personal service, yet in 1955 it made no change in the language of section 581a which provided that the three-year limitation was not applicable to persons absent from the state.

In concluding that the adoption of section 417 in effect modified the prior enacted section 581a (which is the gist of defendant's argument in this court), the trial court's memorandum opinion noted that in 1907 when the Legislature used the words "absence from the State" in section 581a, there was no reason to state specifically that the exception for absent persons applied only to those who could not be served. It was accepted legal doctrine at the turn of the century that "absence from the State" and "not amenable to suit within the State" were synonymous. Section 417 was not enacted until 44 years later. The court's memorandum opinion also said, "Since service on a defendant absent from the state was inconceivable in 1907 and for many years thereafter, the failure of § 581a to provide for absent defendants who could be served does not indicate an intent to deny them the benefit of the statute. Rather such failure is simply a *casus omissus,* an eventuality unprovided for because nobody thought it could happen."

The error in the court's logic is that it overlooks the fact that by the enactment of section 417 in 1951 the Legislature was providing a method for personal service outside the state where none had existed before, but it did not also require that such service had to be made in order to avoid the application of the three-year limitation. In this respect it is significant that when section 417 was amended in 1957 in another regard, the Legislature failed to provide that because it was now possible to make absent persons amenable to service the action would have to be dismissed for failure to serve such persons. It is also significant that quasi in rem jurisdiction was well recognized in 1907 when section 581a was adopted. Such jurisdiction, of course, would render an out of state resident amenable to the extent of his assets here. (*Murray* v. *Murray* (1896) 115 Cal. 266 [47 P. 37].) Yet section 581a provided in effect that in such a situation the action would *not* be dismissed for failure to serve the non-resident within three years.

When the order appealed from in this case was made, section 581a

excepted from the provision that no dismissal could be had as to an un-served out of state defendant actions "to partition or to recover possession of, or to enforce a lien upon, or to determine conflicting claims to, real or personal property. . . ." This legislative enumeration of certain exceptions by necessary implication excludes all other exceptions. (45 Cal.Jur.2d, Statutes, § 133, p. 639, and cases there cited.)

It is true that there is a divergence of authority throughout the United States as to dismissals of actions against unserved absent persons if process could be served notwithstanding such absence. However, in jurisdictions in which such dismissals may be had, we have found none in which the right to such dismissal is not expressed in a statute but, as would be the situation in the instant case, is merely implied.

There are many reasons why such an implication should not be read into the statutes at bench, particularly since when the complaint herein was dismissed the Legislature had not yet made operative the comparatively simple methods of serving out-of-state residents which, as hereinafter set forth, it provided in 1969 enactments. Such judicial "legislation" would require a plaintiff having a cause of action against a person who has left the state to keep a constant watch on the absentee's whereabouts and on the process service laws of the foreign jurisdiction in which the defendant ultimately locates, so that the plaintiff could ascertain whether the defendant was "amenable" to suit in this state. An example of the difficulty of service in a foreign country is the situation in Mexico as disclosed by the affidavits in the instant case. The documents to be served on a Mexican resident, after being authenticated by the county clerk in California, are "legalized" by the Mexican consul with jurisdiction over the locality. The consul then sends the documents to the Mexican Department of Foreign Relations which legalizes the signature of the remitting consul and forwards the documents to the superior court of the Mexican state where the defendant resides. That court then orders a civil court of original jurisdiction to effect service. This is done by a court officer called "Actuario," who after service certifies to his court that service has been made. The evidence of service goes back through the same chain to the court of origin, or is delivered to a local attorney, if one has been employed by plaintiff, for remission to plaintiff's attorney. All documents for service in Mexico must first be translated into the Spanish language. The affidavits in the case at bench say nothing about the costs of these proceedings.

The foregoing was the statutory situation prior to the dismissal of plaintiff's complaint. ■ In 1970, by amending section 581a to extend to defendants absent from the state but amenable to service, the three-year limitation of that section, the Legislature recognized for the first time that

such right to dismissal had not theretofore existed. Moreover, to enable service on the absent person to be made without going through such procedure as the Mexican one above mentioned, the Legislature in 1969 adopted chapter 4 of title 5 of the Code of Civil Procedure (§ 413.10 et seq.), operative July 1, 1970, providing reasonable methods and proof of out of state service. (Stats. 1969, ch. 1610, § 3.)

In *Coates Capitol Corp.* v. *Superior Court* (1967) 251 Cal.App.2d 125 [59 Cal.Rptr. 231], the court found that the exception concerning concealment of a defendant did not apply to a corporation. Defendant's comfort in this decision is misplaced. There is no analogy between a corporation and an individual in this respect. A corporation, being a creature of the law, cannot conceal itself; and if a domestic corporation, it cannot absent itself from the state. A foreign corporation, if it is doing business within the state, is in the same position. (*Taylor* v. *Navigazione Libera Triestina* (9th Cir. 1938) 95 F.2d 907.) A corporation, either one organized in the state or one doing business within the state, is in effect present in the state in the person of its statutory agent who is subject to service in an action against the corporation. .

Defendant contends that the exclusion of absentee time from the computation of the three-year dismissal period denies an absent defendant equal protection under the Fourteenth Amendment and under article I, section 11, of the California Constitution, which provides that "[a]ll laws of a general nature shall have a uniform operation" and which is "substantially the equivalent of the equal protection clause." (*Dept. of Mental Hygiene* v. *Kirchner* (1965) 62 Cal.2d 586, 588 [43 Cal.Rptr. 329, 400 P.2d 321, 20 A.L.R.3d 353].) Defendant cites no authority for this contention.

█ Section 581a "is nothing more than a rule of procedure, designed to encourage promptness in prosecution of actions." (*Gonsalves* v. *Bank of America* (1940) 16 Cal.2d 169, 172 [105 P.2d 118].) "To the extent . . . that the nonresidence of a party makes a real distinction between his situation and that of resident parties, distinctions of procedure based on such difference of situation may be prescribed by statute" and do not deny nonresidents equal protection. (16A C.J.S., Constitutional Law, § 559, p. 508.)

The order is reversed.

Pierce, P. J., and Regan, J., concurred.