[No. B016304. Second Dist., Div. Three. Feb. 26, 1987.]

In re ELDORADO INSURANCE COMPANY in Liquidation.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Plaintiff and Appellant, v.
BRUCE BUNNER, as Insurance Commissioner, etc., Defendant and Respondent.

COUNSEL

Clausen, Harris & Campbell, Kenneth H. Clausen, Marie D. Clause and Gregory P. Orland for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General and Edmond B. Mamer, Deputy Attorney General, for Defendant and Respondent.

OPINION

ARABIAN, J.—

### INTRODUCTION

California Insurance Guarantee Association (CIGA) appeals from the order of the Superior Court denying its motion for an order for refund of money paid on claims under the Longshore and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq.) and for an order that claims under this act are not the responsibility of CIGA and must be paid by the liquidator of Eldorado Insurance Company (Eldorado). Respondent, the Insurance Commissioner of the State of California is the liquidator of Eldorado (Liquidator). The appeal raises the issue whether claims under the federal Longshore and Harbor Workers' Compensation Act are "covered claims" as defined by Insurance Code section 1063.1, subdivision (c)(1), which CIGA is required to pay.[1]

### FACTS

On December 11, 1978, the Superior Court of the County of Los Angeles ordered Eldorado liquidated and appointed the Liquidator.

According to the Executive Director of CIGA, Eldorado, prior to its insolvency, wrote a large volume of workers' compensation policies to employers located mostly in California. These policies generated "many claims" for workers' compensation benefits under the California Labor Code and "a number" of claims for benefits under the Longshore and Harbor Workers' Act (federal claims). The Liquidator asserted that these federal claims were covered claims and were the responsibility of CIGA. CIGA accepted them as timely filed within the meaning of the Insurance Code, adjusted and paid them "under protest," asserting that they were not "covered claims" within the meaning of Insurance Code section 1063.1, subdivision (c)(1), but rather were the sole responsibility of the Liquidator.

After CIGA had paid approximately $227,000 in federal claim payments and approximately $23,000 in related adjustment expenses, it filed a motion

---

[1] All future statutory references are to the Insurance Code unless otherwise indicated.

in the superior court seeking a determination that the federal claims were the responsibility of the Liquidator and that CIGA was entitled to reimbursement of the monies paid in settlement and adjustment of them. The trial court denied CIGA's motion, stating the Legislature intended that the insurance industry cover these claims. CIGA subsequently filed a timely notice of appeal.

## DISCUSSION

Resolution of the issue requires the interpretation of section 1063.1, subdivision (c), defining the term "covered claims" as used in the act which sets forth CIGA's powers and duties. Specifically, we must determine whether reference to "workers' compensation benefits" includes federal benefits pursuant to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq.) as well as benefits arising from California's Workers' Compensation Law (Lab. Code, § 3201 et seq.).

As there are no judicial precedents addressing this issue to inform us, we turn to principles of statutory construction for guidance. The primary rule of statutory construction, to which all other such rules are subject, is that courts must ascertain the intent of the legislature. A statute must be construed in light of the legislature's purpose and design, and in enforcing its command, both the policy expressed in its terms and the object implicit in its history and background should be recognized. (*People* v. *Navarro* (1972) 7 Cal.3d 248, 273 [102 Cal.Rptr. 137, 497 P.2d 481].) The mere literal construction of a provision ought not to prevail if it is opposed to the intention of the legislature as made apparent by the statute, provided that the words are sufficiently flexible to admit of some other construction which effectuates that intention. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].)

With these principles in mind, we examine the relevant provisions of the law.

### CIGA's Purpose and Structure.

 In an effort to protect the insurance buying public from the insolvency of its insurers, the Legislature created CIGA by adding article 14.2 to the Insurance Code, effective September 2, 1969. (Stats. 1969, ch. 1347, § 3, p. 2699.)[2]

---

[2]See Barger, *California Insurance Guarantee Association* (1970) 45 State Bar J. 475.

"CIGA is an involuntary, unincorporated association of insurers admitted to transact business in California. Each insurer is required to participate in CIGA as a condition of doing business in this state. The statutory purpose of CIGA is to provide for each insurer member insolvency insurance to pay the claims arising out of policies issued by an insolvent insurer. (Ins. Code, § [*sic*] 119.5, 1063 et seq.)" (*In re Imperial Ins. Co.* (1984) 157 Cal.App.3d 290, 293 [203 Cal.Rptr. 664].)

As the court in *Biggs* v. *California Ins. Guarantee Assn.* (1981) 126 Cal.App.3d 641, 644 [179 Cal.Rptr. 16], observed, the "primary objective [of CIGA] is to provide insurance against 'loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies.' (Ins. Code, § 119.5)."

CIGA is funded by an assessment levied on member insurers, based upon premium volumes. (§ 1063.5.) Each time an insurer becomes insolvent, CIGA collects premiums from each of the solvent member insurers for the payment of the "covered claims" of the insolvent insurer and for payment of costs of adjustment of claims. The claim payments and adjusting costs are allocated to one or more of the following categories: (a) workers' compensation claims, (b) automobile claims; and (c) all claims other than workers' compensation and automobile claims. The premium payments for each category are required to be used to pay the claims and costs allocated to that category. (*Ibid.*)

CIGA is obligated to pay "covered claims" as that term is defined in section 1063.1, subdivision (c)(1). "Covered claims" do not necessarily include all claims which the insolvent insurer would have been obligated to pay if it were not insolvent.

Any insurer of "workmen's compensation" is required to participate in CIGA. (§ 1063.) ■ Section 109 of the Insurance Code defines Workmen's compensation insurance as "insurance against loss from liability imposed by law upon employers to compensate employees and their dependents for injury sustained by the employees arising out of and in the course of employment . . . ." This definition is broad enough to encompass insurance for claims for benefits pursuant to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq.) as well as insurance for claims pursuant to the California Workers' Compensation Act (Lab. Code, § 3201 et seq.). Since the statutory definition of section 109 includes insurance for federal workers' compensation liability as well as state workers' compensation liability, there is no exemption for those insuring federal compensation claims only. (§ 1063.) Assessment for workers' compensation claims is based upon the insurer's premium volume for that category. Again, there is no

provision to exempt premiums received for federal workers' compensation insurance. (§ 1063.5.)[3]

Entirely separate from CIGA is the liquidator, who, in the person of the Insurance Commissioner, assumes control over the insolvent insurance company, its liabilities and its assets for the purpose of carrying out the order to liquidate and wind up the insolvent business. (§§ 1016, 1037.)

### The Definition of "Covered Claims."

Section 1063.1, subdivision (c)(1), provides: " 'Covered claims' means the obligations of an insolvent insurer, including the obligation for unearned premiums, (i) imposed by law and arising out of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the liquidator in this state or to the association on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings; (iv) which were incurred prior to, on, or within 30 days after the date the liquidator was appointed; (v) for which the assets of the insolvent insurer are insufficient to discharge in full; (vi) in the case of a policy of workers' compensation insurance, to provide workers' compensation benefits under the Workers' Compensation Law of this state and (vii) in the case of other classes of insurance if the policy is issued to a resident of this state or claim against an insured thereunder is made by a resident of this state."[4]

The remainder of section 1063.1, subdivision (c), defines what " 'covered claims' shall not include." Section 1063.1, subdivision (c)(2) expressly excludes claims based on certain *classes* of insurance or on *ocean marine* insurance: " 'Covered claims' shall not include any obligations arising from life, title, surety, disability, credit, mortgage, or mortgage guaranty insurance, nor arising from a policy of ocean marine insurance."[5] Premiums for these

---

[3]CIGA asserts that it has never "knowingly" assessed any company the premium volume derived from insurance against Longshore and Harbor Workers' Compensation claims. However, the record reveals that some insurance companies probably include such premiums in the general category of workers' compensation when they report premium volume for assessment purposes. There is nothing in the record that suggests that insurance companies *exclude* such premiums.

Whether Eldorado collected premiums for Longshore and Harbor Workers' Compensation insurance or included such coverage "as an accommodation, without separate charge," as contended by CIGA, is irrelevant. Eldorado contracted to provide this coverage and premiums it received for workers' compensation insurance were subject to assessment.

[4]The original reference was to "workmen's compensation law," which was not capitalized. The reference was changed to "Workers' Compensation Law," and capitalized in 1976. (Stats. 1976, ch. 444, § 2, pp. 1173-1174; see Ins. Code, § 46.)

[5]Section 100 lists the various "classes" to which insurance in California is divided and includes "Workmen's compensation." "Ocean marine" insurance is not included; however, "marine" is. CIGA contends that the exclusion of ocean marine risks demonstrates the Legislature's general intent that all claims cognizable under maritime law or federal statutes be excluded from CIGA's responsibility. Because of the express statutory language regarding worker's compensation, analyzed and discussed herein, we find no merit in this contention.

expressly excluded classes and the ocean marine portion of marine insurance are expressly exempt from the assessments and other requirements of CIGA. (§ 1063.)

Section 1063.1, subdivisions (3) through (8) exclude certain types of claims and limit CIGA's liability on certain claims. For example, subdivision (c)(4) excludes obligation to other insurers, insurance pools, or underwriting associations, except as otherwise provided, and subdivision (c)(7) excludes a claim to the extent it is covered by other insurance. Of relevance to the issue of this appeal are the deductible of one hundred dollars ($100) (subd. (c)(5)) and the maximum benefit of $500,000 (subd. (c)(6)), limitations which are applicable to all claims *except* claims for workers' compensation benefits.[6]

Both private insurers and the state, through the State Compensation Insurance Fund (State Fund), provide insurance for Longshore and Harbor Workers' Compensation liability. The State Fund is an agency of the state, authorized to transact worker's compensation insurance "required or authorized by law of this state to the same extent as any other insurer." (§ 11778.) Originally, the fund was authorized to insure employers against their liability "under the United States Longshoremen's and Harbor Workers' Compensation Act, or other federal or maritime laws when written incidental to and in connection with California Workmens' Compensation, as fully as any private insurer." (Former § 11779.) In 1976, the requirement that the fund's insurance of federal workers' compensation be incidental to insurance for state workers' compensation was eliminated. (Stats. 1976, ch. 444, § 5, pp. 1174-1175.)[7]

It is significant that when the Legislature expanded the State Fund's authority to provide federal Longshore and Harbor Workers' Compensation coverage, it added subdivision (c)(8) to the definition of "covered claims." (Stats. 1976, ch. 444, § 2, pp. 1173-1174.) Subdivision (c)(8) *expressly excludes* Longshore and Harbor Workers' Compensation claims on State

---

[6]Section 1063.1, subdivision (c)(5) provides: " 'Covered claims,' except in the case of a claim for workers' compensation benefits, shall not include any claim in an amount of one hundred dollars ($100) or less, nor the first one hundred dollars ($100) of any claim in excess of one hundred dollars ($100), nor that portion of any claim which is in excess of any applicable limits provided in the insurance policy issued by the insolvent insurer."

Section 1063.1, subdivision (c)(6) provides: " 'Covered claims' shall not include that portion of any claim, other than a claim for workers' compensation benefits, which is in excess of five hundred thousand dollars ($500,000)."

[7]This expansion of the State Fund's authority to insure federal claims was prompted by the lack of availability of this insurance from private insurers due to changes in the federal Longshore and Harbor Workers' Compensation Act which "swept more employers under the act and radically increased the benefits." (Stats. 1976, ch. 444, § 1, pp. 1172-1173.)

Fund policies.[8] It would not have been necessary for the Legislature to add this provision if "covered claims" did not include federal claims. (Cf. *People ex rel. Cranston* v. *Bonelli* (1971) 15 Cal.App.3d 129, 135 [92 Cal.Rptr. 828].)

CIGA focuses on the language of section 1063.1, subdivision (c)(1)(vi), defining "covered claims" as the obligations of an insolvent insurer, "in the case of a policy of workers' compensation insurance, to provide workers' compensation benefits under the Workers' Compensation Law of this state." CIGA contends this language was intended to *limit* CIGA's responsibility to claims for state workers' compensation benefits only. In isolation, the words lend themselves to this interpretation. However, when considered in the context of the entire subdivision defining "covered claims," another, more reasonable, interpretation becomes apparent.

After providing that covered claims be an unpaid obligation imposed by law and arising from an insurance policy of the insolvent insurer (subds. (c)(1)(i) and (ii)), the definition sets forth other features of the claim: (iii) the claim was submitted to the liquidator or CIGA before the set deadline; (iv) it was incurred prior to, on, or within 30 days after the date the liquidator was appointed; and (v) the assets of the insolvent insurer are insufficient to discharge it in full.

Subdivisions (vi) and (vii) parallel each other and differentiate CIGA's obligations with reference to workers' compensation policies and all other classes of insurance:

"(vi) in the case of a policy of workers' compensation insurance, to provide workers' compensation benefits under the Workers' Compensation Law of this state and (vii) in the case of other classes of insurance if the policy is issued to a resident of this state or claim against an insured thereunder is made by a resident of this state."

---

[8]Section 1063.1, subdivision (c)(8) provides: " 'Covered claims' shall not include any obligations arising out of the issuance of an insurance policy written by the separate division of the State Compensation Insurance Fund pursuant to the provisions of Sections 11802 and 11803."

Sections 11802 and 11803 require the Fund to keep the Longshore and Harbor Workers' Compensation insurance business separate from its other insurance business.

Section 11802 provides: "All premiums, reserves, investment income, and all property of whatsoever kind derived or acquired by the fund from its transaction of insurance pursuant to the United States Longshoremen's and Harbor Workers' Compensation Act shall be maintained and identified in separate accounts and records."

Section 11803 provides: "All claims, costs of doing business, liabilities, expenses, and obligations arising out of or related to the fund's transaction of insurance pursuant to the United States Longshoremen's and Harbor Workers' Compensation Act shall be paid and charged to the income of whatsoever nature derived from its United States Longshoremen's and Harbor Workers' Compensation Act insurance business only:"

Thus it appears, with regard to all classes of insurance other than workers' compensation, CIGA must pay only those claims against policies issued to California residents or claims made by California residents. With regard to workers' compensation claims, CIGA is obligated to provide benefits applying the eligibility requirements of the state's Workers' Compensation Law. For example, whether a resident or a nonresident, an employee whose injuries occur outside the state, is entitled to workers' compensation if the contract of employment was entered into in California. (See, e.g., *Benguet Con. M. Co.* v. *Indus. A. Com.* (1939) 36 Cal.App.2d 158, 163-165 [97 P.2d 267].)[9]

When the requirements of subdivisions (c)(1)(vi) and (vii) were first added to the CIGA bill, an analysis prepared by the Assembly Committee on Finance and Insurance made no special mention of a limitation on workers' compensation claims, simply stating, "Covered claims eligible for payment by the guarantee association are defined as those arising out of policies issued to residents of this state or payable to residents of this state, which are unpaid by the insolvent insurer, and are presented as a claim to the liquidator and were timely filed with him." (Analysis of Assem. Bill No. 1310, as amended June 19, 1969, by Assem. Com. on Finance and Ins.)

The inclusion of coverage for federal claims is consistent with the general purpose of CIGA to protect California from the insolvency of insurers and the resulting adverse effects on employers and workers. California has a long history of a strong public policy favoring the injured worker. California workers' compensation act is required to be "liberally construed by the courts with the purpose of extending [its] benefits for the protection of persons injured in the course of their employment." (Lab. Code, § 3202.) Claims for workers' compensation enjoy the same preference over other debts of an employer, his estate, or the insurer, as claims for wages. (Lab. Code, § 4908; *Kinder* v. *Superior Court* (1981) 125 Cal.App.3d 308 [178 Cal.Rptr. 57] [because of the preferential treatment due workers' compensation claimants, liquidator was authorized to pay workers' compensation to disabled workers who failed to file timely claims, which were secured under the law existing on the date of liquidation].)

This preferential treatment is also reflected in the definition of "covered claims," where deductibles and maximum recovery limitations are imposed upon all classes of insurance except workers' compensation. (§ 1063.1, subd. (c)(5).) It seems very unlikely that the California Legislature would fail to

---

[9]While the application of these requirements may disqualify some federal claims, federal claims as a class are not excluded by definition as claimed by CIGA. Since the issue was not raised, we do not address the question of whether CIGA may be entitled to refund of federal benefit payments on claims which do not meet the California eligibility requirements.

provide protection for the injured worker whose right to compensation derives from insurance business conducted in California, simply because the basis of his insured claim happens to be federal, rather than state.

DISPOSITION

The order is affirmed.

Klein, P. J., and Danielson, J., concurred.