Filed 5/12/15; pub. order 6/4/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| JUSTIN LEBER et al., | C075204 |
| Plaintiffs and Appellants, | (Super. Ct. No. CV09-2201) |
| v. | |
| DKD OF DAVIS, INC., | |
| Defendant and Respondent. | |

Justin Leber and Katherine Neumann (collectively, Leber) sued DKD of Davis, Inc. (DKD), under California's "lemon law,"[1] after buying a Silverado truck with an allegedly defective transmission. Leber timely appeals from a judgment following the trial court's order granting DKD summary judgment. We shall affirm.

---

[1] The Song-Beverly Consumer Warranty Act, found at Civil Code section 1790 et seq. (the Act). Further undesignated statutory references are to the Civil Code.

## BACKGROUND

In the operative complaint, Leber sued DKD and General Motors Company (not a party on appeal) under the Act. Leber alleged the Silverado was "a new motor vehicle," and DKD and General Motors issued an " 'express warranty.' " The Silverado has a defect, despite a reasonable number of repairs, and is not fit for ordinary purposes, but neither defendant replaced it or offered restitution.

DKD denied the allegations, pleading Leber did not state a claim under the Act, no warranty was given, and the Silverado was sold "as is."

DKD presented evidence the truck had previously been sold to another buyer, who traded it in nearly a year later. During the sale now at issue, Leber signed various documents, including a "Buyers Guide" which states the Silverado was bought "used," "AS IS-NO WARRANTY," and with over 10,000 miles on it. The "as-is" part states: "YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs . . . ."

Leber opposed DKD's motion with a combination of legal arguments and facts regarding a warranty *by General Motors*. Leber also proffered several opposing facts, including that the General Motors warranty was transferrable to subsequent owners, and General Motors had paid for the unsuccessful attempts to fix the alleged defect. The trial court sustained objections to some of Leber's evidence including evidence showing how *other* dealers filled out the Buyers Guide to account for the transfer of a manufacturer's warranty.[2]

---

[2] Leber does not challenge any of those evidentiary rulings on appeal. Therefore this excluded evidence is not relevant and we shall not consider it. (See *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067 (*Salas*).)

DKD replied that Leber had not refuted that Leber acknowledged on sale that the Silverado was "used" and sold "as is" with no warranty *from DKD*. However, DKD did not dispute that the General Motors warranty had not expired at the time of sale.

The trial court ruled DKD produced evidence *it* did not give Leber an express warranty, and Leber provided no contrary evidence, but instead bought the Silverado as is which precluded the existence of any implied warranty by DKD.[3]

## DISCUSSION

## I

### *Standard of Review*

"In reviewing a defense summary judgment, we apply the traditional three-step analysis used by the trial court, that is, we (1) identify the pleaded issues, (2) determine if the defense has negated an element of the plaintiff's case or established a complete defense, and if and only if so, (3) determine if the plaintiff has raised a triable issue of fact." (*Meddock, supra,* 220 Cal.App.4th at p. 175.)

"We review the trial court's grant of summary judgment de novo. [Citation.] We consider all the evidence offered in connection with the motion, except that which the trial court properly excluded. [Citation.] In conducting our de novo review, we must view the evidence in a light favorable to plaintiffs, liberally construing their evidentiary

---

[3] Leber prepared a purported settled statement of the oral argument on the motion, replete with factual assertions. After DKD objected, the trial court instead signed a settled statement that simply reflected the arguments made but not reported in the trial court. As DKD also pointed out in the trial court, the purpose of this settled statement is obscure, because, given de novo review, the oral arguments on a summary judgment motion in the trial court are of no utility on appeal, absent an oral concession by counsel. (See, e.g., *Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 174-175 (*Meddock*).) We also note with disapproval that Leber cites facts from *non-adopted* parts of the proposed settled statement, to which DKD properly objects.

submission while strictly scrutinizing defendant's showing, and resolving any evidentiary doubts or ambiguities in plaintiffs' favor." (*Salas, supra,* 198 Cal.App.4th at p. 1067.)

II

*Contentions and Analysis*

There is no dispute that the Silverado was not a new vehicle as that term is used in common parlance, and no dispute that DKD sold it with an as is disclaimer in the Buyer's Guide. The dispute revolves around the special definition of a *new* vehicle under the Act, and the effect, if any, of the *as is* clause in the Buyer's Guide provided by DKD in this case, because of the alleged existence of the transferable General Motors warranty.

Leber first contends triable issues remain because he can pursue claims of breach of implied warranty of merchantability or breach of implied warranty of fitness for a particular use. We disagree, because no implied warranties exist.

As we have explained, "Enacted in 1970, the Act 'regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties.' " (*Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, 1486 (*Joyce*).)

Under the Act, " 'Consumer goods' means any *new* product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables. 'Consumer goods' shall include new and used assistive devices sold at retail." (§ 1791, subd. (a), italics added.) Thus, the Act applies to "new" products as defined, with an exception for assistive devices--devices to aid the disabled--sold at retail, in which case the Act applies to both "new and used" devices.

Leber points out that the Act provides for an implied warranty of merchantability and implied warranty of fitness in connection with the sale of consumer goods. (§ 1791.1, subds. (a) & (b).) However, after defining consumer goods to refer to new goods, and having provided one exception for used assistive devices, the Legislature

4

presumably intended the Act to apply to and only to new products, unless otherwise explicitly so stated. (See, e.g.,. *Schweisinger v. Jones* (1998) 68 Cal.App.4th 1320, 1326 ["*expressio unius est exclusio alterius*"]; *People* ex rel. *Cranston v. Bonelli* (1971) 15 Cal.App.3d 129, 135 ["legislative enumeration of certain exceptions by necessary implication excludes all other exceptions"].)

Leber does not persuade us that a used, as is vehicle qualifies as a new vehicle for purposes of triggering the implied warranties in section 1791.1 of the Act.[4]

Leber does point to a statute providing that no disclaimer of an implied warranty is effective unless the buyer is informed in a "conspicuous writing" attached to the goods which clearly states each of the following: "(1) The goods are being sold on an 'as is' or 'with all faults' basis. [¶] (2) The entire risk as to the quality and performance of the goods is with the buyer. [¶] (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair." (§ 1792.4, subd. (a).) He contends the Buyer's Guide does not qualify as a disclaimer under this "very strict" statute. His theory is that by failing to mention the continuation of the General Motors warranty, the disclaimer was misleading.

However, the statute Leber relies on applies to goods "governed by the provisions of this chapter," (§ 1792.4) and therefore, because he has not first demonstrated that the vehicle falls within the definition of "consumer goods" as defined by section 1791.1, section 1792.4 has no apparent application to the facts of this case.[5]

---

[4] A sale " 'as is' . . . means that the manufacturer, distributor, and retailer disclaim all implied warranties that would otherwise attach to the sale of consumer goods." (§ 1791.3.) "Every sale of goods that are governed by the provisions of this chapter, on an 'as is' . . . basis . . . shall constitute a waiver by the buyer of the implied warranty of merchantability and, where applicable, of the implied warranty of fitness." (§ 1792.5.)

[5] Moreover, as DKD argues, federal regulations promulgated under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq.) compelling the use of the Buyer's Guide and

Instead, this case is governed by a different statute, providing: "Notwithstanding the provisions of subdivision (a) of Section 1791 defining consumer goods to mean 'new' goods, the obligation of a distributor or retail seller of used consumer goods in *a sale in which an express warranty is given* shall be the same as that imposed on manufacturers under this chapter" with certain exceptions. (§ 1795.5, italics added.) Thus, in this second statutory exception to the "new" goods definition of section 1791, the Legislature decreed that the Act would apply where--and only where--"an express warranty" is provided during the sale of used goods. No express warranty was provided *by DKD:* To the contrary, DKD cautioned Leber that the sale was "AS IS-NO WARRANTY" and that he was responsible for any repairs needed to this used Silverado.

Leber contends that because a balance remained on the warranty provided by General Motors at the time DKD sold him the Silverado, it was still a new vehicle. For this proposition, he relies on a superficial reading of our opinion in *Jensen v. BMW of North America, Inc*. (1995) 35 Cal.App.4th 112 (*Jensen*).

Leber's opening brief does not quote the statute interpreted in *Jensen*, nor explain the factual and procedural posture of that case. *Jensen* involved the Tanner Consumer Protection Act, which sets forth what "nonconformities" breach a warranty, and provides, inter alia, regulations for any alternative dispute resolution mechanism. (§ 1793.22, subds. (a)-(d).) The precise subdivision at issue provides in part: " 'New motor vehicle' includes . . . a dealer-owned vehicle and a 'demonstrator' *or other motor vehicle sold*

---

governing its terms (16 C.F.R. § 455.2), appear to provide that a dealer "may" reference the existence of a continuing manufacturer's warranty, they do not appear to *compel* the dealer to include such information. (See 16 C.F.R. § 455.2 (b)(2)(v) ["If the vehicle is still under the manufacturer's original warranty, you *may* add the following paragraph below the 'Full/Limited Warranty' disclosure: MANUFACTURER'S WARRANTY STILL APPLIES. The manufacturer's original warranty has not expired on the vehicle. Consult the manufacturer's warranty booklet for details . . . ."], italics added.) But, as we have noted *ante*, as the trial court excluded Leber's evidence in this area, we need not resolve that question herein.

*with a manufacturer's new car warranty . . . ."* (§ 1793.22, subd. (e)(2), italics added.) This definition applies to the rest of section 1793.22, and to section 1793.2, which explicitly governs the duties and liability of *manufacturers*. (See § 1793.2, subd. (a).)

Jensen successfully sued *the manufacturer* of a "low-mileage 1988 BMW she leased in 1989" that had defective brakes. (*Jensen*, *supra*, 35 Cal.App.4th at p. 119.) Jensen had been told that the car was a "demonstrator" and had over 7,500 miles on it, but that she would receive BMW's 36,000-mile warranty "on top" of those miles, *and* she was given a warranty booklet. (*Ibid.*) We held "the words of section 1793.22 are reasonably free from ambiguity and cars sold with a balance remaining on the manufacturer's new motor vehicle warranty are included within its definition of 'new motor vehicle.' The use of the word 'or' in the statute indicates 'demonstrator' and 'other motor vehicle' are intended as alternative or separate categories of 'new motor vehicle' if they are 'sold with a manufacturer's new car warranty.' " (*Id.* at p. 123.) In examining the legislative history, we emphasized that "[d]efective *used* cars are addressed by a separate section of the Act. (§ 1795.5.)" (*Id.* at p. 123, fn. 2, italics added.) Because section 1793.22, subdivision (e) pertains to *manufacturer* liability, our conclusion in *Jensen* that a used vehicle sold with a manufacturer's warranty qualified as a new vehicle *under that statute* is inapplicable to this case, which does not involve manufacturer's liability.

If the Legislature had intended the definition of "new" vehicle in section 1793.22, subdivision (e) to apply throughout the Act, it would not have explicitly limited its applicability by providing: "For the purposes of subdivision (d) of Section 1793.2 and this section, the following terms have the following meanings," explicitly limiting the ambit of the various definitions that followed. (§ 1793.22, subd. (e).)

Leber continues his claim as follows: "Even if [§] 1795.5 applied to this case, it would not require a retail seller of used goods to issue its own express warranty at the time of sale in order to be liable under implied warranties, only that an express warranty

7

be given." He focuses on the passive voice used in the phrase "a sale in which an express warranty is given" and reasons that because the General Motors warranty existed, the sale *by DKD* was *a sale in which an express warranty was given* within the meaning of section 1795.5. He points to section 1791.2, subdivision(a)(1), which defines an express warranty in part as: "A written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." He reads this to mean that if *any* of the named entities--manufacturer, distributor, or retailer--provides an express warranty, *each* of those entities is deemed to have done so.

That is a contorted reading of the statute. The natural reading of the statute is that an express warranty arises out of the sale *as to any entity* who "undertakes to preserve or maintain the utility of" the product or "provide compensation" in the event it fails. In summarizing the Act, we have said it applies to those "who make express warranties." (*Joyce*, *supra*, 198 Cal.App.4th at p. 1486.) As between seller and buyer in *this* sale the seller, DKD, undertook no such liability, but, as described above, explicitly and clearly negated it. Leber may have an action against General Motors, but we decline to address its possible liability because it is not a party to this appeal and did not make the summary judgment motion granted by the trial court, now under review.

Leber contends any liability DKD had would be indemnified by General Motors. This may or may not be true, but we fail to see the relevance of this claim in *establishing* DKD's liability in the first instance.

Finally, although we agree with Leber that, as a remedial measure, the Act should be construed broadly (see *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 184), that interpretive rule comes into play when and only when a statutory ambiguity has been tendered. "We could not, of course, ignore the actual words of the statute in an attempt to vindicate our perception of the Legislature's purpose in

8

enacting the law." (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 993 [interpreting the Act].)  We find no ambiguity in the application of the Act herein.

Accordingly, we agree with the trial court that no triable issue of fact exists.[6]

## DISPOSITION

The judgment is affirmed.  Leber and Neumann shall pay DKD of Davis, Inc.'s, costs of this appeal.  (See Cal. Rules of Court, rule 8.278.)


            DUARTE          , J.



We concur:



      HULL            , Acting P. J.



      MAURO         , J.

---

[6] Because we can resolve this case by applying the relevant sections of the Act, and find no ambiguity in the Act's application, we need not analyze the definitions of "new" and "used" vehicles in the Vehicle Code.  (See Veh. Code, §§ 430 ["A 'new vehicle' is a vehicle constructed entirely from new parts that has never been the subject of a retail sale"], 665 ["A 'used vehicle' is a vehicle that has been sold"].)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| JUSTIN LEBER et al., | C075204 |
| Plaintiffs and Appellants, | (Super. Ct. No. CV09-2201) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| DKD OF DAVIS, INC., | |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed May 12, 2015, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

     HULL     , Acting P. J.


     DUARTE     , J.

1

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Yolo County, Daniel P. Maguire, Judge. Affirmed.

The Bickel Law Firm and Alexandra R. Byler for Plaintiffs and Appellants.

Toschi, Sidran, Collins & Doyle, David R. Sidran, Thomas M. Crowell, and Hayden S. Alfano for Defendant and Respondent.