[No. F009378. Fifth Dist. Dec. 12, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIE L. MELTON, Defendant and Appellant.

COUNSEL

James J. Milam for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Anthony L. Dicce and Alison Aleman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MARTIN, J.—On July 8, 1986, a criminal complaint was filed against defendant in Stanislaus County Municipal Court charging him as follows:

count I—carrying a concealed weapon (Pen. Code, § 12025);[1] count II—assault with a firearm (§ 245, subd. (a)(2)); and count III—brandishing a weapon (§ 417, subd. (a)).

On November 19, 1986, jury trial commenced in municipal court. The jury found defendant guilty of carrying a concealed weapon, not guilty of brandishing a weapon and was unable to reach a verdict on the assault charge. The municipal court subsequently dismissed the assault charge on motion of the district attorney.

The municipal court denied defendant's motion for a new trial and defendant filed a notice of appeal. Thereafter, the Appellate Department of the Stanislaus County Superior Court affirmed the judgment of conviction. On October 9, 1987, the appellate department of the superior court certified the case to this court for its consideration and review. (Cal. Rules of Court, rule 63.)

On November 6, 1987, this court ordered the proceeding transferred for hearing and decision. (Cal. Rules of Court, rule 62(a).)

### STATEMENT OF FACTS

The trial court proceedings were tape recorded and the record on appeal does not include a reporter's transcript of those proceedings. The circumstances of the offense are taken from the stipulated final statement on appeal: "1. On July 8, 1986, Dennie L. Melton was charged in a complaint with violations of Sections 12025, 245(a)(2) and 417(a) of the California Penal Code. On November 21, 1986, Melton was convicted by a jury of a violation of § 12025 of the California Penal Code. Dennie L. Melton appeals from that conviction on the grounds that at the time of the commission of the offense he was a California police officer, specifically a member of the California State Police. More specifically, this appeal is based on the efficacy of a retroactive reinstatement of Dennie L. Melton which retroactive reinstatement covered the period of time of the commission of this alleged offense on June 18, 1986. In addition, Dennie L. Melton appeals on the grounds that the provisions of § 12026 of the California Penal Code authorized Dennie L. Melton to carry a concealed weapon on his person at Stop'n Save Liquors where Dennie L. Melton was employed and working at the time of the commission of the alleged offense.

"· · · · · · · · · · · · · · · · · · · ·

---

[1] All *statutory* references are to the Penal Code unless otherwise indicated.

"3. Dennie L. Melton while working at Stop'n Save Liquors on June 18, 1986, as a clerk, was armed with a concealed weapon. Dennie L. Melton did not have a permit to carry the weapon. Dennie L. Melton was assaulted by one or two customers while working. In the course of that assault, Dennie L. Melton testified that he pulled a holster and gun from his waistband. He further testified that he grabbed it because he felt it was slipping out. The gun remained holstered. A video tape recording of the alleged offense was received into evidence and is part of the record in this case. The jury found the defendant not guilty of a violation of § 417, could not reach a verdict on the charge of § 245(a)(2) of the California Penal Code and convicted the defendant of a violation of § 12025 of the California Penal Code, carrying a concealed weapon. During the evidence in this case a witness testified that he had been told by deputies sheriff [*sic*] that a concealed weapon could be carried in the workplace. [Municipal Court] Judge [Terry] Cole advised the jury and the witness that this was not correct. . . .

". . . . . . . . . . . . . . . . . . .

"The court refused to give Defendant's Instruction No. 12 which instructed the jury on the privilege of a California police officer to carry a concealed weapon.

"The court refused Defendant's Instruction No. 17 which stated, 'By Penal Code § 12026 the criminal sanctions for carrying concealed a concealable weapon without a license are not imposed on persons who own, possess or keep concealable firearms within their places of residence or business.' "

## DISCUSSION

### I.

### DOES SECTION 12026 PERMIT AN EMPLOYEE TO CARRY A CONCEALED WEAPON IN HIS WORKPLACE?

Section 12025 states in relevant part: "(b) Any person who carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person without having a license to carry such firearm as provided in this chapter is guilty of a misdemeanor punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or by both such fine and imprisonment . . . .

"(c) Firearms carried openly in belt holsters are not concealed within the meaning of this section, nor are knives which are carried openly in sheaths suspended from the waist of the wearer. . . ."

Section 12026 states: "Section 12025 shall not be construed to prohibit any citizen of the United States over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Section 12021 from owning, possessing, or keeping within his place of residence or place of business any pistol, revolver, or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess, or keep such firearm at his place of residence or place of business shall be required of him."

■■■ Defendant contends on appeal: "The District Attorney argued that Section 12026 does not contain an express permission for carrying a concealed weapon in the workplace, that [section] 12025 and [section] 12026 must forbid carrying a concealed weapon in the workplace. This argument makes no sense. Section 12025 does not forbid the owning or possessing of a weapon. Section 12025 prohibits carrying a concealed weapon. Section 12026 becomes mere surplusage if the District Attorney's argument were correct. Section 12026 provides for the carrying of a concealed weapon at home and in the workplace. Interpretation must not render parts of the statutes or other statutes surplusage. . . .

"The prosecution's argument abrogates the permission granted by [section] 12026. Essentially, the prosecution argues that you can possess, keep and own a concealable firearm at the workplace. You cannot, according to the prosecution's argument, carry a concealed weapon concealed on your person in the workplace. Logically, this same argument prohibits the carrying of a weapon concealed in one's home. In short, the argument of the prosecution reduces [section] 12026 to a statutory surplusage."

Defendant cites a number of authorities to support his interpretation of the relevant code sections. However, once read, they are obviously either distinguishable from the instant case or do not support defendant's argument, or both. In *People* v. *Robinson* (1974) 41 Cal.App.3d 658 [116 Cal.Rptr. 455], defendant rented a room from a Sacramento homeowner. In March 1972, defendant shot and killed his landlady's boyfriend in Solano County. The landlady later evicted defendant for failure to pay rent. While removing defendant's clothes from her home, the landlady discovered a .32-caliber weapon in the defendant's coat pocket. She spoke with Solano County and City of Sacramento law enforcement officers regarding her discovery. The officers searched the pockets of the coat for inventory purposes and discovered two sets of keys which belonged to the victim. Defendant was

convicted of first degree murder and appealed, contending four separate searches were illegal under the Fourth Amendment. The First District Court of Appeal held the searches did not violate the Fourth Amendment and affirmed the judgment of conviction. The court noted in passing: "We do not perceive the presence of the gun discovered by Mrs. McJoy [the landlady] in the coat of defendant on her premises to constitute a crime in view of the provisions of section 12026 permitting the possession of a pistol, revolver, or other firearm within his place of residence." (*Id.* at p. 672, fn. 3.)

In *People* v. *Overturf* (1976) 64 Cal.App.3d Supp. 1 [134 Cal.Rptr. 769], defendant owned and managed a three-building apartment complex in Los Angeles County. He had hired a young man to do gardening and maintenance work in exchange for a salary and an apartment. The employee annoyed other tenants with loud parties and excessive consumption of alcohol. For these reasons, defendant discharged the employee and told him to remove his personal effects from the apartment. The employee returned to pick up his things and brought three of his friends. A dispute arose as to how much money defendant owed the employee. The employee threatened defendant and the latter returned to his apartment and telephoned the sheriff. In the meantime, defendant saw the three men on his driveway and feared they might be tampering with his car. Fearing for his safety, defendant took a .22-caliber pistol from his apartment, went to the driveway, and fired the weapon once into a pile of dirt. The municipal court convicted defendant of violating former section 12031, subdivision (a). Defendant appealed, contending subdivision (f) of the statute (now subdivision (h)) exempted him from liability.[2] The Appellate Department of the Los Angeles County Superior Court disagreed and affirmed the conviction. The statute stated nothing in the section shall prevent or preclude any person engaged in lawful business from having a loaded firearm within such person's place of business or upon such person's private property. However, when the statute referred to geographical areas where certain conduct is permitted— "place of business" and "private property" in subdivision (f)—the statute stated only that nothing in the section shall prevent any person from *having* a loaded weapon. The appellate department held "carrying" and "having"

[2] Former section 12031 stated in relevant part: "(a) Except as provided in subdivision (b), every person who carries a loaded firearm on his person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory is guilty of a misdemeanor.

". . . . . . . . . . . . . . . .

"(f) Nothing in this section shall prevent any person engaged in any lawful business . . . or any officer, employee, or agent authorized by such person for lawful purposes connected with such business, from having a loaded firearm within such person's place of business, or any person in lawful possession of private property from having a loaded firearm on such property."

are not synonymous terms. "Having" relates to an act or state of possessing while "carrying" refers to the act or instance of carrying. The verb "carry" means to convey or transport or transfer from one place to another. "Having," as it appears in subdivision (f) of section 12031, is to be read in the sense of "owning, possessing, or keeping." The court held such a reading harmonizes with the companion firearm control statutes, sections 12025 and 12026. The court noted section 12025 makes it an offense to carry a concealable firearm upon a person or in a vehicle without having a license to do so. The court stated section 12026 provides an exception to section 12025. The latter section states section 12025 shall not be construed to prohibit a citizen over age 18 from owning, possessing, or keeping a concealable firearm within his place of residence or place of business. The section also provides no license to purchase, own, possess or keep a firearm at one's place of residence or business shall be required. The appellate department held that language was a clear indication that "owning, possessing, or keeping" a firearm at one's place of residence or business does not equate with "carrying" such a weapon.

In *People* v. *Marotta* (1981) 128 Cal.App.3d Supp. 1 [180 Cal.Rptr. 611], defendant possessed a loaded 25-caliber automatic pistol on the floorboard of his leased taxicab. Although defendant carried the weapon in the vehicle for protection while operating the taxicab, he had no license to do so. The Los Angeles Municipal Court found defendant guilty of carrying a pistol concealed within a vehicle (§ 12025, subd. (a)), carrying a concealed weapon on his person (§ 12025, subd. (b)), and carrying a loaded firearm on his person and in a vehicle in a public place and on a public street (§ 12031). Defendant appealed, contending he was entitled to keep the pistol in his "place of business"—his taxicab—under the provisions of section 12031, subdivision (h). The Appellate Department of the Los Angeles County Superior Court agreed and reversed the conviction. The appellate department initially reversed defendant's conviction of carrying a concealed weapon on his person. The court found no evidence in the record to support this charge. The sole evidence referred to the weapon being in the vehicle and not on defendant's person. As to the remaining counts, the appellate division reasoned the California Legislature did not limit the place of business exception to a fixed place of business. Section 12025, subdivision (a) prohibits carrying a concealed weapon in any vehicle except as otherwise provided. Subdivision (b) of the same law prohibits carrying the weapon concealed on the person. Section 12026 provides that section 12025 shall not be construed to prohibit any citizen from owning, possessing or keeping any pistol within his place of business. The same broad language is used in section 12031, subdivision (a), which refers to carrying "in a vehicle." Section 12031, subdivision (h) says nothing is to be construed to prevent having a loaded weapon in a "place of business."

■ The general purpose of The Dangerous Weapons' Control Law (§ 12000 et seq.) is to control the threat to public safety in the indiscriminate possession and carrying about of concealed and loaded weapons. However, the express exception, to allow business persons to protect their property, must also be given effect. The *Marotta* court held it could not choose to give heed to one legislative purpose, so as to achieve the laudable social end of stronger gun control, and yet ignore the plain intent of the legislative purpose embodied in the exceptions. The legislative purpose which allows business people to possess weapons to protect their property is as important to taxicab operators as it is to business persons in fixed geographic locations. The possible danger to the public posed by cab drivers with guns is no more grave than that posed by armed retail store operators. Since sections 12025 and 12031 prohibit the "carrying" of a concealed weapon and the exceptions permit "owning, possessing, or keeping," and the "having" of the weapon in a place of business (§§ 12026, 12031, subd. (h)), the dissent argued that "carrying" is always prohibited—even in a place of business. The dissent maintained since the cab is moving around, the driver is "carrying" the weapon even when not on his person and therefore such conduct would never fit the exception which limits one to "having" the weapon. The appellate department held this distinction inapt in the instant situation. It concluded the exceptions to "carrying" of a gun on a person or in a vehicle are broadly phrased and plainly do not exclude a vehicle within the contemplation of a "place of business."

In *People* v. *Foley* (1983) 149 Cal.App.3d Supp. 33 [197 Cal.Rptr. 533], police approached defendant's van after he "ran" a posted stop sign and parked in a red zone. Defendant had his right hand on a handgun and attempted to hide it behind the engine compartment cover. The officers ultimately searched the vehicle and found an automatic handgun in the engine compartment area and a second handgun underneath the driver's seat. Defendant alleged he had used his van for sleeping, eating, bathing, and entertainment purposes and registered it with the Department of Motor Vehicles as a motor home. The trial court ruled as a matter of law the provisions of sections 12026 and 12031, which excuse unlicensed possession of loaded or concealed weapons in a "place of residence," had no application to such possession in the "cab" section of a vehicle used and/or equipped as a residence while it was in transit. Following a nonjury trial, the Los Angeles Municipal Court found defendant guilty of two violations of section 12025, subdivision (a) and two violations of section 12031, subdivision (a). The Appellate Department of the Los Angeles County Superior Court reversed one count for failure of proof and affirmed in all other respects. Defendant's van had two essential functions: (1) to serve as a means of transportation or a motor vehicle whenever on a public street or public property or in transit and (2) the capability to function as a home or

place of residence when legally upon private property and being used as a place of residence. One may consider a van his home or place of residence. However, when he drives his van on the public streets or highways, he is subject to arrest and successful prosecution for possession of concealed or loaded firearms. A van driver violates sections 12025 and 12031 when driving upon a public street or thoroughfare while having concealed or loaded firearms within the vehicle without the applicable license.

In *People* v. *Wooten* (1985) 168 Cal.App.3d 168 [214 Cal.Rptr. 36], a Kern County sheriff's deputy and California Highway Patrol officers stopped a speeding pickup truck after observing erratic movement. The officers approached the driver's side of the vehicle and recognized defendant from a San Bernardino County Sheriff's Department intelligence flyer. The flyer had named defendant as one of a group involved in auto theft, narcotics, weapons, explosives, and possibly murder. The sheriff's deputy conducted a patdown search for the safety of himself and the other officers. The search revealed an empty shoulder holster, a fixed-blade knife in a sheath on the defendant's belt, and a loaded .38-caliber automatic pistol in a clip holster inside his left boot. The deputy arrested defendant for carrying a concealed weapon on his person. The officer then searched the inside of the pickup cab and found .38-caliber cartridges under the driver's seat and an unloaded .38-caliber revolver and a .38-caliber automatic pistol in the glove compartment. Defendant was convicted of carrying a concealed weapon upon his person and carrying a concealed weapon in a vehicle. He appealed and this court reversed the judgment because the trial court failed to apply *Harvey-Madden*[3] principles to the flyer which motivated the patdown of the defendant. With respect to the substantive offenses, defendant claimed his place of business as a bounty hunter was his vehicle. Thus, he argued section 12026 should compel reversal of his conviction for carrying a concealed, loaded weapon in the glove compartment. Defendant relied upon *People* v. *Marotta, supra,* 128 Cal.App.3d Supp. 1, holding the section 12026 "place of business" exemption applicable to a taxicab. This court distinguished *Marotta*. While taxicab drivers must do business in their cabs, bounty hunters do not. Their job is to get out of their cars and arrest bail jumpers, not to run over them. The vehicle is simply a means to transport the bounty hunter. Unlike a taxi driver whose work cannot be done without a vehicle, bounty hunters may leave their own cars behind and use airplanes, buses, trains or taxis to pursue bail jumpers. This court further held section 12026 provides an exemption for possession in one's residence or place of business. The natural meaning of the term "place of business" is a fixed location, simply because almost all businesses are conducted in some

---

[3] *People* v. *Madden* (1970) 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971]; *People* v. *Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689].

office, store or other building. When a business is mobile, one generally says the business is not conducted in any particular place, but in an area. The court held giving section 12026 the broad meaning advocated by defendant would render it meaningless. Anyone whose business puts him or her in transit could then use section 12026 to justify an exemption from section 12025. The obvious result would be that even convicted felons (other than those specified by statute) could easily set themselves up as traveling salesmen and carry concealed weapons in their cars with impunity. This would frustrate the obvious legislative purpose of section 12025.

The defendant in *Wooten* further contended sections 12025 and 12026 were unconstitutionally vague. ■ Due process requires a statute to be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt. This court concluded section 12026 provides clear guidelines for law enforcement. Approached in a commonsense manner, any reasonably intelligent policeman can tell when he is in a residence or place of business. A person of "common intelligence" does not have to guess at the meaning of section 12026. Anyone reading its terms would see its exemption for residences and places of business does not extend to the vehicle used by every businessman who must travel in the course of his business. The phrase "place of business" has a narrower meaning than each of its component terms. It is used to decribe stores, offices, warehouses, and other facilities where business is conducted. These are not indefinite expanses or mobile pieces of personal property.

■ None of the foregoing cases resolves whether an employee may *carry* a concealed weapon in his workplace under section 12026. Resolution of this question requires us to construe the statutory language. The rule of the common law, that penal statutes are to be strictly construed, has no application to the Penal Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice. (§ 4.) In the construction of a statute, the intention of the Legislature is to be pursued if possible. When a general and particular provision are inconsistent, the latter is paramount to the former. A particular intent will control a general one that is inconsistent with it. (Code Civ. Proc., § 1859.) ■ This court has summarized certain well established rules of statutory interpretation in *Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 603-604 [130 Cal.Rptr. 110]: "Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished. (*Cedars of Lebanon Hosp.* v. *County of L.A.* (1950) 35 Cal.2d 729, 734-735 . . . ; *People* v. *Sciortino* (1959) 175 Cal.App.2d Supp. 905, 908-909 . . . .) Words of a statute must be given such interpretation as will promote rather than defeat the general purpose

and policy of the law. (*City of L.A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256-257 . . . .) Moreover, legislative intent should be gathered from the whole act rather than from isolated parts or words. (*People* v. *King* (1952) 115 Cal.App.2d Supp. 875, 878 . . . ; *People* v. *Sciortino, supra,* 175 Cal.App.2d Supp. 905, 909.) The object sought to be achieved by the statute and the evil sought to be prevented are of prime consideration in its interpretation. (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467 . . . .) Finally, although the courts are not at liberty to impute a particular intention to the Legislature when nothing in the language of the statute implies such intention, where the main purpose of the statute is expressed the courts will construe it so as to effectuate that purpose by reading into it what is necessary or incident to the accomplishment of the object sought. (See *Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810-811 . . . ; *Struckman* v. *Board of Trustees* (1940) 38 Cal.App.2d 373, 376 . . . .)"

Section 12025, subdivision (b) punishes one who "carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person without having a license . . . ." Section 12026 construes the "owning, possessing, or keeping within his place of residence or place of business any . . . firearm capable of being concealed upon the person . . ." to be permissible conduct under section 12025, subdivision (b). █ "Carry" has been defined to mean "to hold, wear, or have upon one's person." (Webster's Third New Internat. Dict. (1961) p. 343.) █ "Own" has been defined to mean "to have or hold as property or appurtenance: have a rightful title to, whether legal or natural." (*Op. cit. supra,* p. 1612.) █ "Possess" has been defined to mean "to make (as a person) the owner or holder (as of property, power, or knowledge)." (*Op. cit. supra,* p. 1770.) █ "Keep" has been defined to mean "to cause to remain in a given place, situation, or condition: maintain unchanged: hold or preserve in a particular state." (*Op. cit. supra,* p. 1235.)

█ Exceptions to the general rule of a statute are strictly construed. (*City of National City* v. *Fritz* (1949) 33 Cal.2d 635, 636 [204 P.2d 7].) The rule of strict construction of exceptions is not opposed to the requirement of liberal construction of the codes. (*Merchants Nat. Bk.* v. *Continental Nat. Bk.* (1929) 98 Cal.App. 523, 533 [277 P. 354].) In the event of statutory ambiguity or uncertainty, the maxim *expressio unius est exclusio alterius* is applicable. (*Williams* v. *Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 603 [68 Cal.Rptr. 297, 440 P.2d 497].) Under this maxim, the enumeration of acts, things, or persons as coming within the operation or exception of a statute will preclude the inclusion of other acts, things, or persons in the class. (See *People* v. *Mancha* (1974) 39 Cal.App.3d 703, 713 [114 Cal.Rptr. 392].) If a statute contains an express exception or excep-

tions, it will be presumed no others were intended. (*People* ex rel. *Cranston* v. *Bonelli* (1971) 15 Cal.App.3d 129, 135 [92 Cal.Rptr. 828].)

At oral argument, appellate counsel directed our attention to a newly enacted revision of section 12026, effective January 1, 1989, which, defendant argues, if applied retroactively would materially affect the trial court's conclusions and refused instructions in the instant case and would require our reversal of the judgment. Amended section 12026 provides as follows: (a) Section 12025 shall not be construed to prohibit any citizen of the United States over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Section 12021, from owning, possessing, keeping, or carrying anywhere within the citizen's place of residence, place of business, or on private property owned or lawfully possessed by the citizen any pistol, revolver, or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess, keep, or carry any such firearm within the citizen's place of residence, place of business, or on private property owned or lawfully possessed by the citizen, shall be required of the citizen.

"(b) Nothing in this section shall be construed as affecting the application of Section 12031." As applied to the instant case, the only material change to the present provisions of section 12026 is the addition of the words "or carrying anywhere." In other words, the section as amended provides that section 12025 shall not be construed to prohibit any person within the described class from owning, possessing, keeping or carrying anywhere within the person's place of residence, place of business, etc. any pistol, revolver, or other firearm capable of being concealed upon the person and no permit or license shall be required to do so.

▮ In our view, whether amended section 12026 is applied retroactively or not, the result in the instant case is the same. Here, it is undisputed that at the time in question defendant was carrying *concealed upon his person* a concealable weapon as defined in section 12025, and he did not possess a permit or license to do so. Assuming arguendo revised section 12026 creates a new or additional exception to section 12025, subdivision (b), i.e., the carrying anywhere within a person's residence or his place of business a concealable weapon, the underlying question is whether the amendment authorizes or allows a person to carry concealed upon his person any pistol, revolver or other firearm capable of being so concealed without a permit or license. The Legislative Counsel's Digest to Assembly Bill No. 4370 is instructive in this regard. It provides in relevant part: "AB 4370, Hauser. Firearms. [¶] (1) Existing law provides generally that any person who carries a concealed firearm, as specified, upon the person with-

out having a license therefor is guilty of a misdemeanor. Existing law further provides that this provision shall not be construed to prohibit any citizen of the United States over the age of 18 years who resides or is temporarily within this state, and who is not within prescribed classes, from owning, possessing, or keeping within the citizen's place of residence or place of business a firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess, or keep any such firearm at the citizen's place of residence or business shall be required.

"This bill would revise the latter provision by providing that (a) the former provision shall not be construed to prohibit such a citizen from owning, possessing, keeping, or carrying such a firearm anywhere within the citizen's place of residence, place of business, or on private property owned or lawfully possessed by the citizen and (b) no permit or license to purchase, own, possess, keep, or carry is required for any such firearm." (Legis. Counsel's Dig., Assem. Bill No. 4370 (1987-1988 Reg. Sess.).) Neither section 12026 as presently constituted or as amended speaks in terms of a concealed weapon, nor does the Legislative Counsel's Digest. Rather, they refer specifically and exclusively to a weapon capable of being concealed.

Section 12025, as previously quoted herein, expressly prohibits the carrying *concealed upon his or her person* any pistol, revolver or firearm capable of being concealed upon the person without having a license to carry such firearm. Certain express and limited exceptions to this provision, inapplicable here, are set forth in section 12025. In our view there is a major distinction between carrying a concealable weapon, as provided in amended section 12026 and carrying such a weapon concealed upon the person as prohibited in section 12025. We find nothing in the language of amended section 12026, nor in the Legislative Counsel's Digest of the amended section, which may reasonably be construed as excepting from the provisions of section 12025 the prohibition against the carrying concealed upon the person of any pistol, revolver, or other firearm capable of being so concealed in a person's residence or place of business or elsewhere. ▉ ▉ ▉ ▉ ▉ Thus, whether one applies the existing provisions of section 12026 or the amended version thereof to the agreed facts in the instant case, defendant's argument must fail.[4]

---

[4] While we agree generally with the courts' reasoning in *Overturf, Marotta* and other cases cited by defendant and the People herein, in our view section 12026 does not provide any exceptions to section 12025. Section 12025, subdivision (b) does not prohibit any person, as described in that section, from owning, possessing, keeping or carrying, so long as not concealed upon the person, any pistol, revolver or other firearm capable of being concealed upon the person, in one's residence, place of business or elsewhere. Section 12026, both before and after the 1988 amendment, commences with the language "Section 12025 shall not be construed . . . ." "To construe" has a separate and distinct meaning from excepting or "to except." It appears to us that section 12026 merely highlights certain circumstances where

Defendant nevertheless argues: "The trial judge instructed incorrectly concerning the exemption provided by [section] 12026. The trial court's gratuitous remarks before the jury concerning the Witness Davis' answers began this error and impressed it indelibly on their memories. The refusal to instruct and the erroneous instructions repeated, compounded and reinforced the error. The prejudice and error does not end with the erroneous instructions."

With respect to alleged instructional error, the trial court refused defendant's instruction No. 17: "By Penal Code Section 12026, the criminal sanctions for carrying concealed a concealable firearm without a license are not imposed upon persons who own, possess or keep concealable firearms within their places of residence or business." Instead, the trial court instructed the jury in the express language of section 12026. In light of the conclusions drawn above, the trial court properly instructed the jury on the charged offense.

 With respect to the trial court's "gratuitous remarks," Melton's employer, Mark Davis, testified for the defense. Davis said several sheriff's deputies had told him a concealed weapon could be carried in the workplace. The court questioned Davis and then suggested he not follow the deputies' advice: "Let me suggest to you that you not follow their advice. You ought to talk to a lawyer. You ought to talk to a law enforcement officer who knows what he is talking about." Davis then stated someone had authorized him to carry a concealable firearm on his person without a license. The court replied: "Let me suggest to you, you not do that in the future. It happens to be against the law, sir . . . ." Although a trial judge should not appear to take sides in proceedings before the jury, the judge may properly ask questions on his own and may enlarge or limit attorney questioning to seek the truth. (*People* v. *Alfaro* (1976) 61 Cal.App.3d 414, 425-427 [132 Cal.Rptr. 356].) The trial court's questioning of witness Davis and the judge's subsequent remarks were not improper. Given Davis's testimony under the circumstances and charges here involved, the trial court properly admonished him regarding the law. Absent such an admonishment, the jury could have easily accepted Davis's testimony as being the state of the law which, of course, is not so. The trial court's questions and statements were proper in light of the court's statutory duty to ensure effective ascertainment of the truth. (§ 1044; Evid. Code, § 765.)

---

owning, possessing, keeping or carrying a concealable weapon is not prohibited under section 12025. Section 12031 further explains whether while carrying the weapon it may be loaded or must be unloaded. Thus, it seems to us that our appellate courts should properly distinguish true exceptions to section 12025, subdivisions (a) and (b), as set forth in further subdivisions of that section, from other provisions of the law which merely construe or explain legislative intent, as in section 12026.

## II.

### DOES THE RETROACTIVE RESTORATION OF A STATE POLICE OFFICER AFTER AN ALLEGED OFFENSE AUTHORIZE THAT OFFICER TO INVOKE THE WEAPON EXEMPTION UNDER SECTION 12027, SUBDIVISION (a)?

The parties agreed to the following version of the relevant facts in their stipulated final statement on appeal: "2. The basic facts of this case are that Dennie L. Melton was a California State Police Officer. On February 28, 1986, Dennie L. Melton received a notice of termination from the California State Police. He appealed that termination, went through a personnel hearing and, in July, 1986, was retroactively reinstated to all his benefits as a California State Police officer. Though the reinstatement was subject to a twenty-day suspension, the suspension was not in effect on June 18, 1986, the date of the commission of the alleged offense. At the trial a Lt. Glaser of the California State Police force took the stand testifying over objection that Melton had been terminated at the time of the offense, June 18, 1986, and that the retroactive reinstatement did not affect the termination. Dennie L. Melton testified that he had been retroactively reinstated. Exhibits were received and made a part of the court's record showing the retroactive reinstatement. [Municipal court] Judge Terry Cole ruled as a matter of law that Dennie L. Melton was not a peace officer on June 18, 1986, for the purposes of [section] 12025 of the California Penal Code and for the purposes of that section he had not been retroactively reinstated as a peace officer though he had for the purposes of pay, retirement, benefits, . . . etc."

Section 12027 states in relevant part: "Section 12025 does not apply to or affect any of the following: [¶] (a)(1) Any peace officer, listed in Section 830.1 [sheriffs, police, marshals, constables etc.] or 830.2 [members of Highway Patrol, State Police Division, National Guard etc.], whether active or honorably retired, other duly appointed peace officers, honorably retired peace officers listed in subdivision (c) of Section 830.5 . . . ."

■ Defendant contends on appeal: "The stipulated statement says Melton enjoyed a retroactive restoration to his state police officer job. Therefore, Melton was a state police officer on the date of his offense. The District Attorney argues contrariwise. Melton, he argues, may be retroactively restored to his job, but that is not good enough to apply the authorization of [section] 12027(a) [of the] California Penal Code. However, the statutes and decisional law indicates [sic] the contrary ought to be the rule. A police officer retroactively restored to duty can be punished for conduct unbecoming an officer occurring during the period of his suspension, *Hooks* v. *State Personnel Board* (1980) 111 Cal.App.3d 572, 576 . . . . Clearly,

Melton was retroactively restored to duty. Clearly, Melton received all the benefits that he had during the period of his suspension from duty by that retroactive restoration to duty. No reason exists in logic or law for denying Melton immunity. If the retroactive return to a job provides a basis for penalizing the peace officer, the retroactive return to a job brings with it the privileges of carrying a weapon."

Defendant's argument primarily rests upon Government Code section 19584 which provides in relevant part: "Whenever the [state personnel] board revokes or modifies an adverse action and orders that the employee be returned to his or her position, it shall direct the payment of salary and all interest accrued thereto, and the reinstatement of all benefits that otherwise would have normally accrued. Benefits shall include, but shall not be limited to, retirement, medical, dental, and seniority benefits pursuant to memoranda of understanding for that classification of employee to the employee for such period of time as the board finds the adverse action was improperly in effect."

Defendant contends "reinstatement of all benefits" includes the statutory exemption granted to state police officers and other peace officers under section 12027, subdivision (a). The People maintain defendant has cited no statute or case law to excuse his compliance with the Penal Code during the period of his termination. They contend his retroactive reinstatement did not make defendant a peace officer for purposes of section 12027 on the date of the offense. Section 12027, subdivision (a)(1) exempts any peace officer listed in section 830.1 or 830.2, whether active or honorably retired, from the provisions of section 12025. Section 830.2, subdivision (b) states any member of the California State Police Division is a peace officer, provided the primary duty of that officer shall be to provide police services for the protection of state officers, state properties, and their occupants. Section 830 provides: "Any person who comes within the provisions of this chapter and who otherwise meets all standards imposed by law on a peace officer is a peace officer, and notwithstanding any other provision of law, no person other than those designated in this chapter is a peace officer." At the time of the offense in the instant case, defendant was not a peace officer because he did not meet "all standards imposed by law on a peace officer." Defendant cites Government Code section 19584 and maintains he was retroactively reinstated as a peace officer and that reinstatement meant he was a peace officer on the date of the offense. However, the thrust of that section is the remuneration of an affected employee whenever the State Personnel Board revokes or modifies an adverse employment action. Nothing in the legislative history of the statute suggests it retroactively reinstates statutory exceptions available to peace officers under the Penal Code. (See Stats. 1945, ch. 123, § 1, p. 569; Stats. 1949, ch. 1416, § 14, p. 2470; Stats. 1968, ch. 1431,

§ 1, p. 2827; Stats. 1981, ch. 526, § 12, p. 1892; Stats. 1985, ch. 1195, § 6, p. 4049.) Further, Government Code section 19584 does not excuse such an employee from compliance with the law during a period of suspension or termination.

We conclude the municipal court judge properly ruled defendant was not a peace officer on June 18, 1986, for purposes of section 12027. The judge properly refused to instruct the jury as to that statutory exemption.

The judgment is affirmed.

Woolpert, Acting P. J., and Hamlin, J., concurred.

A petition for a rehearing was denied December 29, 1989, and appellant's petition for review by the Supreme Court was denied February 23, 1989.