Filed 11/26/13  In re Augustin V. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re AUGUSTIN V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. AUGUSTIN V., Defendant and Appellant. | G047844 (Super. Ct. No. DL041024) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregory W. Jones, Judge.  Reversed in part, affirmed in part, and remanded for further proceedings.

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

Augustin[1] V. appeals from a judgment after the juvenile court declared him a ward of the court pursuant to Welfare and Institutions Code section 602, and found true he committed active participation in a criminal street gang while carrying a loaded firearm in public, possession of a firearm by a minor, and street terrorism. Augustin argues the following: (1) The juvenile court erred in finding he committed the offense of street terrorism; (2) the court erred in denying his motion to dismiss count 1 because there was insufficient evidence he carried a shotgun; (3) count 1 must be reduced to a misdemeanor because he cannot be found to have committed the offense of street terrorism; and (4) the matter must be remanded because the court did not expressly determine whether the possession of a firearm by a minor offense was a felony or a misdemeanor.

We agree the true finding on the street terrorism offense must be reversed and the matter must be remanded for the juvenile court to expressly find whether the possession of a firearm by a minor offense was a felony or a misdemeanor. Augustin's other contentions have no merit. We reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

FACTS

Michael Gutierrez parked and locked his 1999 Honda Civic EX on Romneya Drive in Anaheim. Later that afternoon, Gutierrez's uncle drove Gutierrez to where he parked his car. Gutierrez saw the trunk was open and three men dressed in baggy clothing walking away from his car toward a Honda Civic. One of the men carried a subwoofer on his back, a second carried a bag, and the third had something in his pocket. One of the men looked at Gutierrez and his uncle in a very aggressive manner

---

[1] There is some confusion in the record as to whether minor's name is "Agustin," "Augustin," or "Augustine." We refer to minor as Augustin as stated in the operative petition.

2

indicating they should keep their distance. Gutierrez looked into his trunk and saw the subwoofer and amplifier missing. Gutierrez looked into his car and saw the car radio, and car registration and insurance documents, were missing, and a broken key piece was jammed into the ignition. After the three men drove away, a man approached Gutierrez and gave him the license plate number of the Honda Civic. Gutierrez called the police. The items taken from his car had a value of about $450.

Later that same evening, Officers Ryan Blackburn and Salvador Enriquez of the gang unit were on patrol in the claimed territory of the "Family of Latin Kings" (FOLKS) criminal street gang. The officers drove by an apartment complex where two known FOLKS gang members lived. FOLKS gang members used the apartment complex laundry room, which was riddled with gang graffiti, as a hangout. As the officers drove by the laundry room, Blackburn saw Augustin, who was wearing baggy clothes and had clothes covering his arm, leave the laundry room area through a wrought iron gate. Augustin looked at Blackburn and quickly looked away. Blackburn stopped the patrol car, and he and Enriquez got out of the car. Augustin stopped walking, looked towards the officers, and appeared startled.

Blackburn asked Augustin if he would talk with him, and Augustin replied, "'Yes.'" Blackburn asked Augustin where he was coming from, and Augustin answered he was doing laundry in the laundry room. Blackburn asked Augustin where he lived, and Augustin responded on "Lodge Street," which Blackburn knew to be about one-half mile away in the claimed territory of the rival "Citron Street" criminal street gang. Blackburn asked Augustin if he was a member of FOLKS, and Augustin replied "he was an active FOLKS gang member." Augustin told Blackburn he was in the neighborhood visiting his girlfriend but she had already left.

While Blackburn spoke with Augustin, Enriquez went into the laundry room. Enriquez tried to turn on the lights, but they did not work. Enriquez identified himself as a police officer to a man, Jose Luis Equia Villa, who was doing his laundry.

3

When Enriquez illuminated the laundry room with his flashlight, he saw a speaker box, amplifier, and stereo.  Villa denied the items belonged to him.  Enriquez also saw clothes on a couch.

Enriquez asked Villa to leave the laundry room.  Outside, Enriquez asked Augustin if the speaker box, amplifier, and stereo belonged to him, and he said they did not.  Enriquez returned to the laundry room and again illuminated it with his flashlight.  He saw a shotgun shell at the base of the couch.  He removed the clothes from the couch, lifted the cushions, and found a sawed-off shotgun.  Enriquez went outside and told Blackburn he found a shotgun.  Enriquez handcuffed Augustin and returned to the laundry room to continue his search and Blackburn advised Augustin of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436.

Blackburn asked Augustin about the shotgun.  Augustin said he did not know anything about the shotgun and denied touching it.  Blackburn again asked Augustin if he knew anything about the firearm.  Augustin said he would probably be "taxed"[2] because officers found and removed the firearm in the laundry room.

Blackburn told Enriquez that Augustin denied the shotgun belonged to him.  Enriquez approached Augustin and told him to be honest with him about the shotgun.  Augustin denied owning the shotgun but said he could not discuss it in the alley.  Enriquez asked him if he would be more comfortable discussing the shotgun in the patrol car, and Augustin said he would.  Another officer determined the shotgun was loaded.

Enriquez escorted Augustin to the patrol car, placed him in the backseat, and sat down next to him.  Augustin admitted he was in the laundry room earlier that day with his girlfriend.  Augustin stated he found the shotgun, handled it for a while, and put

---

[2]       In gang culture, if a gang member does not follow the gang rules or makes a mistake, such as losing a firearm, the gang member may be "taxed," which means gang members may assault the derelict gang member or force him to pay money.

the shotgun underneath the couch cushions. Augustin also admitted the clothes on the couch were his. Enriquez asked Augustin to provide him with his girlfriend's name, telephone number, and address. He provided only a name, but Enriquez could not locate anyone with that name. When Enriquez asked him about his gang affiliation, Augustin admitted he was a FOLKS gang member, he was "jumped into" the gang two years earlier, and his gang moniker was "[S]iete," which means seven in Spanish. Augustin said FOLKS claimed two territories, one of which was where they were located.

Later, an officer took Gutierrez to the apartment complex and asked him to identify a person. Gutierrez identified Augustin as the person who had the subwoofer on his shoulder and carried it away from his car. Gutierrez identified the stereo equipment as the items that were in his car.

A subsequent petition alleged Augustin committed the following offenses: active participation in a criminal street gang carrying a loaded firearm in public (Pen. Code, § 25850, subds. (a) & (c)(3))[3] (count 1), possession of a firearm by a minor (§ 29610) (count 2), and street terrorism (§ 186.22, subd. (a)) (count 3). The petition alleged Augustin committed counts 1 and 2 for the benefit of a criminal street gang (§ 186.22, subd. (b)).[4]

At the contested jurisdictional hearing, Gutierrez testified Augustin was the man who looked at him aggressively as if to tell him to "mind your own business[,]" and he was not carrying anything. He attempted to clarify his statement to police Augustin was carrying his subwoofer.

---

[3] All further statutory references are to the Penal Code, unless otherwise indicated.

[4] There were other petitions filed against Augustin, including one alleging offenses related to Gutierrez's car. None of those petitions are the subject of this appeal.

Villa testified that when he was in the laundry room, he asked Augustin to remove his clothes so he could do laundry. Villa claimed Augustin did not go into the laundry room but only stood by the door. Villa agreed he had seen "plenty" of kids go into the laundry room. Villa said he never sat on or placed any items in the couch, or saw the shotgun.

After detailing his background, training, and experience, Enriquez testified concerning the culture and habits of traditional, turf-oriented criminal street gangs, and specifically FOLKS. Enriquez explained a gang member would "post[] up" by standing at the entrance of their claimed territory to alert other gang members if rivals were coming, or to notify them about who is present in the neighborhood. Enriquez said that when they arrived that night, there were a number of people on the street who walked away from them when they saw the officers. He said this was the area where they saw Augustin. Enriquez testified that a "gang gun" belongs to the entire gang. He explained veteran gang members dictate who possesses a gun and its location. He stated young gang members typically possess guns because if they are caught, they receive lighter punishment. Enriquez added that each gang member knows who possesses a gun and where it is located. Enriquez opined FOLKS's primary criminal activities are weapons possession and felony vandalism.

Based on his investigation of the case and Augustin's background, including his admissions, Enriquez opined that at the time of the offenses Augustin was an active participant of FOLKS. Based on a hypothetical question matching the facts of the case as relevant here, Enriquez opined that the gun found in the laundry room was possessed for the benefit of, at the direction of, or in association with the FOLKS criminal street gang.

At the close of the prosecutor's case-in-chief, Augustin moved to dismiss the petition pursuant to Welfare and Institutions Code section 701.1. As relevant here,

6

Augustin argued there was no evidence he "possessed" the gun. He argued, "[H]e's hanging out with his clothes, and he happens upon a gun but he does nothing with it. He didn't put it there. Didn't take it out. Put it right back where he found it because he's not going to take a gun. Someone else's gun in a gang neighborhood? It's possibly suicide." The prosecutor argued sufficient evidence supported count 1 because Augustin admitted he handled the shotgun and his clothes were on the couch covering the shotgun. The juvenile court denied Augustin's motion to dismiss, concluding "the evidence is more than ample to establish that [Augustin] possessed the firearm."

The juvenile court found true beyond a reasonable doubt all the offenses and enhancements. The court determined the maximum term of confinement was seven years, sustained the petition, and ordered him to be continued a ward of the court. The court committed Augustin to 180 days in custody, with credit of 73 days served, and continued him on probation with gang-related conditions.

DISCUSSION

*I. Count 3-Section 186.22, subdivision (a)*

Augustin argues he could not be convicted of street terrorism because he acted alone. The Attorney General concedes the issue. Based on *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), we agree that Augustin, who acted alone, could not be convicted of committing street terrorism.

The street terrorism substantive offense, section 186.22, subdivision (a), states: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished . . . in the state prison for 16 months, or two or three years." There are three elements to the substantive street terrorism offense: (1) active participation in a criminal street gang; (2) knowledge the gang's members have engaged

7

in a pattern of criminal gang activity; and (3) willfully promoting, furthering, or assisting in any felonious criminal conduct by members of the gang. (*People v. Albillar* (2010) 51 Cal.4th 47, 56.)

In *Rodriguez, supra,* 55 Cal.4th at page 1128, defendant acted alone in committing an attempted robbery. A jury convicted him of attempted robbery and active participation in a criminal street gang under section 186.22, subdivision (a). (*Rodriguez, supra,* 55 Cal.4th at p. 1129.) The issue in *Rodriguez*, like the issue Augustin raises here, was whether the third element of the crime described in section 186.22, subdivision (a)—willfully promoting, furthering, or assisting in any felonious criminal conduct by members of the defendant's gang—can be satisfied by felonious criminal conduct committed by the defendant acting alone. (*Rodriguez, supra,* 55 Cal.4th at p. 1129.) The court held that it does not, and expressly disapproved of prior cases to the extent they are inconsistent with *Rodriguez.* (*Id.* at p. 1137, fn. 8.)

The *Rodriguez* court began by analyzing the statute according to its "'plain, commonsense meaning . . . .'" (*Rodriguez, supra,* 55 Cal.4th at p. 1131.) The felonious criminal conduct referred to in the statute must be committed "'by members of that gang.'" (*Rodriguez, supra,* 55 Cal.4th at p. 1131.) The word "'[m]embers,'" the court explained, is a plural noun. (*Id.* at p. 1132.) Therefore, the court reasoned "[t]he plain meaning of section 186.22[, subdivision] (a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member. [Citation.]" (*Ibid*.) Because the defendant acted alone, he did not violate section 186.22, subdivision (a). (*Rodriguez, supra,* 55 Cal.4th at p. 1139.)

*Rodriguez* controls the outcome of the issue here. Because the evidence at trial supports the conclusion Augustin acted alone in committing the weapon possession offenses—the only crimes the prosecution relied on to support the third element of the

8

gang participation count—there is insufficient evidence to support the juvenile court's true finding on that count. Accordingly, we reverse the court's sustaining of the petition on count 3.

## II. Count 1-Section 25850, subdivisions (a) & (c)(3)[5]

Augustin raises two arguments concerning count 1. We will address each in turn.

### A. Sufficiency of the Evidence-Carry

Augustin contends the juvenile court erred in denying his motion to dismiss count 1 because "what the evidence actually established was that [he] handled the shotgun" and not that he carried it. As we explain below, the fact he "handled" the shotgun was sufficient to sustain the petition.

"[Welfare and Institutions Code] [s]ection 701.1 provides that a minor's counsel may request, at the close of the People's case, that the court enter a judgment of dismissal: [¶] 'At the hearing, the court, on motion of the minor or on its own motion, shall order that the petition be dismissed and that the minor be discharged from any detention or restriction therefore ordered, after the presentation of evidence on behalf of the petitioner has been closed, if the court, upon weighing the evidence then before it, finds that the minor is not a person described by [Welfare and Institutions Code] [s]ection 601 or 602. If such a motion at the close of evidence offered by the petitioner is not granted, the minor may offer evidence without first having reserved that right.' [¶] Courts have held that [Welfare and Institutions Code] section 701.1 is substantially similar to . . . section 1118 governing motions to acquit in criminal trials and that

_____

5       Effective January 1, 2012, former section 12031, subdivision (a) ("A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person . . . on any public street . . . .") was repealed and replaced with section 25850, subdivision (a), without substantive change. (Stats. 2010, ch. 711, § 4; amending Stats. 2010, ch. 711, § 6.)

therefore the 'rules and procedures applicable to . . . section 1118 . . . apply with equal force to juvenile proceedings. [Citation.] [¶] Thus, the requirement in a criminal case that on a motion for acquittal the trial court is required 'to weigh the evidence, evaluate the credibility of witnesses, and determine that the case against the defendant is "proved beyond a reasonable doubt before [the defendant] is required to put on a defense"' applies equally well to motions to dismiss brought in juvenile proceedings." (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 727, fn. omitted.)

Section 25850, subdivision (a), states: "A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory." There is authority that holding a firearm is the same as carrying it. (*People v. Smith* (1946) 72 Cal.App.2d Supp. 875, 878; contra, *In re Bergen* (1923) 61 Cal.App. 226, 228.) The verb "carry" has been defined as "'to hold, wear, or have upon one's person.'" (*People v. Melton* (1988) 206 Cal.App.3d 580, 592 [quoting Webster's Third New Internat. Dict. (1961) p. 343]; cf. *People v. Overturf* (1976) 64 Cal.App.3d Supp. 1, 6 ["Speaking generally in the context of statutes concerned with firearms, 'carry' or 'carrying' has been said to be used in the sense of holding or bearing arms"].)

Here, sufficient evidence supports the juvenile court's conclusion Augustin carried the shotgun. Augustin admitted he picked up the shotgun when he was in the laundry room with his girlfriend. After Enriquez saw the shotgun shell at the base of the couch, he removed Augustin's clothes from the couch, lifted up the couch cushions, and found the sawed-off shotgun, which another officer later determined was loaded. Additionally, the evidence established FOLKS gang members used the laundry room as a hangout, gangs possess guns used for the benefit of the gang, gang members know where the gang's guns are located, and Augustin was a self-admitted member of FOLKS. Based

10

on this evidence, the juvenile court could reasonably conclude Augustin knew the loaded shotgun was hidden in the couch, he retrieved the shotgun from the couch and handled it in his girlfriend's presence, and he placed his clothes on the couch to further conceal the shotgun that he hid underneath the couch cushions. Thus, there was sufficient evidence for the court to find count 1 true beyond a reasonable doubt.

## B. Felony or Misdemeanor?

Relying on *People v. Robles* (2000) 23 Cal.4th 1106 (*Robles*), Augustin asserts his conviction for count 1 must be reduced to a misdemeanor because the basis for making it a felony was his conviction for street terrorism pursuant to section 25850, subdivision (c)(3), which cannot stand because he acted alone. The Attorney General agrees Augustin's street terrorism conviction is an improper basis to elevate the conviction to a felony, but it asserts there is an alternative basis for the felony, section 25850, subdivision (c)(4), illegal possession of a firearm. Augustin responds the Attorney General improperly relies on an allegation that was not charged in the petition and cannot serve as a basis to elevate the crime to a felony where he did not have notice of the allegations. We agree with the Attorney General.

Section 25850, subdivision (c)(3), states: "Carrying a loaded firearm in violation of this section is punishable, as follows: [¶] . . . [¶] Where the person is an active participant in a criminal street gang, as defined in subdivision (a) of [s]ection 186.22, under the Street Terrorism Enforcement and Prevention Act (Chapter 11 (commencing with [s]ection 186.20) of Title 7 of Part 1), as a felony."

Section 25850, subdivision (c)(4), provides: "Carrying a loaded firearm in violation of this section is punishable, as follows: [¶] . . . [¶] Where the person is not in lawful possession of the firearm, or is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Chapter 2 (commencing with [s]ection 29800) or Chapter 3 (commencing with [s]ection 29900) of Division 9 of this title, or [s]ection 8100 or 8103 of the Welfare and Institutions Code, as a felony."

11

In *Robles, supra,* 23 Cal.4th at page 1115, the California Supreme Court reasoned: "[W]e construe section 12031[, subdivision] (a)(2)(C)'s phrase 'active participant in a criminal street gang, as defined in subdivision (a) of [s]ection 186.22' as referring to the substantive gang offense defined in section 186.22[, subdivision] (a). We pointed out earlier that contrary to what section 12031[, subdivision] (a)(2)(C) says, section 186.22[, subdivision] (a) does not at all define the phrase 'active participant in a criminal street gang.' Instead, section 186.22[, subdivision] (a) defines a substantive gang offense, setting forth the elements of that offense. Thus, carrying a loaded firearm in public becomes a felony under section 12031[, subdivision] (a)(2)(C) when a defendant satisfies the elements of the offense described in section 186.22[, subdivision] (a). Those elements are 'actively participat[ing] in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity' and 'willfully promot[ing], further[ing], or assist[ing] in any felonious criminal conduct by members of that gang.' [Citation.]" Thus, because we reverse Augustin's conviction for count 3 based on *Rodriguez*, *Robles* dictates the elements of that offense were not a valid basis to elevate count 1 from a misdemeanor to a felony.

The Attorney General, however, asserts there is another basis to elevate count 1 to a felony, section 25850, subdivision (c)(4). The subsequent petition charged Augustin in count 1 with active participation in a criminal street gang carrying a loaded firearm. The sole basis alleged in the petition for elevating count 1 to a felony was Augustin's active participation in FOLKS. The subsequent petition does not include the section 25850, subdivision (c)(4), allegation. This issue is whether section 25850, subdivision (c)(4), can now serve as a valid basis for elevating count 1 to a felony on appeal when it was not alleged in the petition.

"'Due process requires that a criminal defendant be given fair notice of the charges to provide an opportunity to prepare a defense and to avoid unfair surprise at

trial. [Citations.] An accusatory pleading stating the charged offense provides the defendant not only with notice of the offense actually charged but also with notice of any necessarily included offenses. [Citation.]' [Citation.]" (*People v. Dixon* (2007) 153 Cal.App.4th 985, 1001.)

We agree with the Attorney General that we have the authority on appeal to substitute a punishment prescribed under one enhancement in place of a punishment under another enhancement when the record shows the latter enhancement does not apply to a defendant by the latter enhancement's own terms (see, e.g., *People v. Strickland* (1974) 11 Cal.3d 946, 960-961), when the defendant had sufficient notice of the enhancement.

Here, the subsequent petition charged Augustin in count 2 with possession of a firearm by a minor in violation of section 29610. At the contested jurisdictional hearing, Augustin defended against this charge. And at the close of the prosecutor's case-in-chief, Augustin moved to dismiss because there was insufficient evidence he possessed the shotgun. Although we are not faced with the situation of a lesser included offense, the subsequent petition placed Augustin on notice he had to defend against the charge he was a minor who unlawfully possessed a shotgun, and thus, his illegal possession of a firearm was a proper basis to elevate count 1 to a felony. (§ 25850, subd. (c)(4).) Thus, we decline Augustin's invitation to reduce count 1 to a misdemeanor and strike the street terrorism enhancement attached to that felony conviction.[6]

---

[6] Because we have reversed the juvenile court's ruling sustaining the petition on count 3 and have concluded there is another basis to elevate count 1 to a felony, we need not address Augustin's claim the three charged offenses were based on the same conduct. (See *People v. Lamas* (2007) 42 Cal.4th 516, 524; *People v. Infante* (2012) 209 Cal.App.4th 987, 991-992, review granted Jan. 16, 2013 (S206084).) Augustin states he raises the issue to preserve it for further review.

*III. Count 2-Misdemeanor or Felony?*

Relying on Welfare and Institutions Code section 702, Augustin argues the juvenile court erred in failing to expressly find whether count 2 was a felony or misdemeanor. The Attorney General responds the court implicitly found it was a felony because the court mentioned the triad of determinate sentences. We agree with Augustin.

Welfare and Institutions Code section 702 states, "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." *In re Manzy W.* (1997) 14 Cal.4th 1199 (*Manzy*), is instructive.

In *Manzy*, the California Supreme Court interpreted Welfare and Institutions Code section 702. The court stated: "The language of the provision is unambiguous. It requires an explicit declaration by the juvenile court whether an offense would be a felony or misdemeanor in the case of an adult." (*Manzy, supra,* 14 Cal.4th at p. 1204.) The section "'means what it says and mandates the juvenile court to declare the offense a felony or misdemeanor.'" (*Ibid*.) The requirement of an express declaration provides assurance "the juvenile court is aware of, and actually exercises, its discretion under Welfare and Institutions Code section 702." (*Manzy, supra,* 14 Cal.4th at p. 1207.) The requirement is directed, "in large part, at facilitating the determination of the limits on any present or future commitment to physical confinement for a so-called 'wobbler' offense." (*Id.* at p. 1206.) "[N]either the pleading, the minute order, nor the setting of a felony-level period of physical confinement may substitute for a declaration by the juvenile court as to whether an offense is a misdemeanor or felony." (*Id.* at p. 1208.) Where the court has failed to make an express finding, remand for a "formal declaration" is not automatic where it "would be merely redundant" and "would amount to harmless error." (*Id.* at p. 1209.) "The key issue is whether the record as a whole establishes that the juvenile court was aware of its discretion to treat the offense as a misdemeanor and to state a misdemeanor-length confinement limit." (*Ibid*.)

14

As we explain above, the juvenile court determined the maximum term of confinement was seven years. In arriving at that term, the juvenile court stated: "Based upon the evidence that I heard then and considered, I am convinced beyond a reasonable doubt as to the truthfulness of her allegations in counts 1 through 3 for petition three and also finding true the enhancement allegation pursuant to [section] 186.22[, subdivision] (b). [¶] I haven't looked this up, but my recollection is -- and correct me if I'm wrong -- count 1 is a 16[-]2[-]3--[.] [¶] . . . [¶] [O]ffense, being sustained as a felony wobbler, being sustained as a felony. [¶] Count 2 is also a 16[-]2[-]3 which would merge for penalty purposes pursuant to section 654. [¶] The enhancement allegation is two, three, or four years. The penalties for that would merge with the [section] 18622[, subdivision] (a) which actually also merges with count 1. [¶] By my calculation, the maximum period of incarceration will be [three] plus [four] or [seven]."

Based on the juvenile court's statements, it is not clear the court considered whether count 2 was a misdemeanor or a felony. The court's only mention of count 2 was its reference to the offense's triad of determinate sentences of 16 months, two years, or three years. The *Manzy* court held "the setting of a felony-level maximum period of confinement" was not a sufficient substitute for an express declaration the offense was a felony or misdemeanor because it does not assure the juvenile court was aware of and actually exercised its discretion. (*Manzy, supra,* 14 Cal.4th at pp. 1207-1208.) This is the only basis the Attorney General relies on to argue the juvenile court properly performed its duties under Welfare and Institutions Code section 702. The Attorney General recognizes that if we determine the court's reference to the triad of determinate sentences was insufficient to sustain the petition on count 2, the matter must be remanded. We conclude the juvenile court's reference was not sufficient and agree the matter must be remanded for the court to expressly declare whether count 2 was a felony or misdemeanor and recalculate the maximum term of confinement.

15

## DISPOSITION

The matter is reversed and remanded with directions to strike count 3 and expressly declare whether count 2 is a felony or a misdemeanor.  The court must recalculate the maximum term of confinement.  In all other respects, the judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


IKOLA, J.

16